As appears from the opinion handed down when this case was before us on the *Page 605 
original hearing, 3 So.2d 236, the demand of the plaintiff is one for damages to his property alleged to have been sustained when the Louisiana Highway Commission, through its contractor, Barber Brothers Construction Company, exercised the right which it had acquired under a right of way over and across his property in building a highway over an already existing road.
In his petition plaintiff alleged that the document purporting to convey the right of way is null and void for various reasons therein set out, all of which are quoted in the reported opinion. The demand for the damage claimed amounts to the sum of $1,275, including the loss of several pecan trees, the loss of two thousand or more cubic yards of dirt taken from the property and the sum of $500 for the damage to his place by reason of the deep ditches dug in front of his house, the cutting off of his barn across the road, and generally making it inconvenient for him to use his property.
Plaintiff impleaded both the Louisiana Highway Commission and the contractor, Barber Brothers Construction Company, as defendants. An exception of no cause of action filed on behalf of Barber Brothers Construction Company was sustained in the lower court and the judgment in that respect was affirmed by this court. When the case went to trial against the Highway Commission, an objection to testimony was sustained and a judgment of non-suit rendered against the plaintiff. On appeal that part of the judgment was reversed by a majority decision of this court and the case was remanded as to that defendant to the lower court for further trial.
On application for re-hearing, this court, in refusing the same, handed down a per curiam which has never been reported. Upon trial on the remand, when plaintiff attempted to prove the damages he claimed, counsel for the Highway Commission objected to testimony covering any other demand than the one for excavating dirt on his property and the loss of his pecan trees. It seems to have been contended, as it is apparently the sole contention made now on this appeal, that by the language of the per curiam, plaintiff was restricted to those two items of damage and that the claim for the digging of the deep ditches on his property and making the same less accessible, has been excluded. The trial judge admitted proof of all the items of damage however and concluded, after hearing the testimony, that plaintiff had sustained damage to the extent of $500 for the diminution in the value of his property brought about by reason of the excavation of the unreasonably deep ditches and for the inconvenience resulting therefrom. The trial judge found from the testimony also that the Highway Commission had removed some dirt from off of the plaintiff's premises to use on an adjoining property but was unable to determine what quantity had been so removed and what was its value. The demand for loss, by destruction, of the pecan trees had not been proven, and the claim in that respect was rejected.
All legal issues involved in the case were settled and disposed of on the original hearing and it is unnecessary for us to discuss them any further at this time. As already stated the sole contention of the defendant now seems to rest on what is its interpretation of the language used in the per curiam handed down at the time a re-hearing was refused.
After quoting at length from the per curiam, counsel for defendant state in their brief: "This per curiam clearly narrowed the issues in the case down to whether the Commission dug the ditches to get dirt to use away from the plaintiff's property, and, if so, whether the plaintiff suffered any damage as a result thereof, and the amount of damages, if any." We cannot agree with counsel that, according to the language of the per curiam, damages for the digging of unreasonably deep ditches in front of the property and thus rendering the same more inconvenient to its owner, had been eliminated. As was stated in the per curiam, the deed was for a right of way and for such other purposes as may be allowed by the laws of Louisiana, and further it was stated, we knew of no law of this State which "would permit the Highway Commission to dig deep ditches all along the sides of a property owner's land on both sides of the right of way and take the dirt from those ditches and use it in making fills on the road at points distant from such owner's land * * *." Further it is stated: "Of course, under the law and by the terms of the deed granting the right of way, the Commission had the right to cut such ditches and drainage on the land as might be reasonably necessary in constructing and maintaining a highway thereon *Page 606 
and to use dirt from these ditches and drains elsewhere on the right of way to make and maintain fills and embankments that might be reasonably necessary for constructing and maintaining the highway. * * * But we do not think that the mere granting of a right of way would authorize the Commission to excavate large ditches all the way across the owner's land on the right of way and make both his property and the highway inaccessible to him where the dirt from these excavations was not used to build a highway across the owner's land but used on some other part of the road. * * * Few people, we think, would donate a right of way for a road if they thought that the Highway Commission could, if it saw fit, dig ditches and canals through the property so as to practically isolate his land and take the dirt to some other part of the road. The owner in donating the right of way and large quantities of dirt would not only be getting no benefit from the construction of the road but would be making his property inaccessible and thereby depreciating its value."
The meaning of this language is clear and whilst, unquestionably, it conveys the idea that one of the elements of damage sustained might have been the removal of some of the dirt from off the plaintiff's property and using it at some other points on the highway, it leaves no doubt also that if, by the digging of unnecessarily deep ditches and canals on his property he has become practically isolated and its value has thereby depreciated, he can recover for that also. The district judge was therefore correct in admitting testimony to prove such an item of damage.
The proof submitted on this point amply supports the findings of the trial judge. Several of the plaintiff's neighbors testified as witnesses on his behalf and corroborated his testimony with regard to the depth and appearance of the ditches which had been dug in front of his property. After reciting the facts they all had certain remarks to make which forcibly reflected their estimate of the damage to the plaintiff's property. Typical of such remarks is one found in an answer given by the witness Monroe Jean to the question whether there was any way of estimating the loss and damage to the property by reason of the deep ditches dug there. His answer was: "Well, I would just consider that I didn't have any place." Mr. Richard Evans stated: "Well, I would say the highway has damaged his place there about $1200.00, and if it was my place, I would not have those ditches for $1200.00. I would have hated to see one dug in front of my place at that price." A Mr. Hayworth testified that there was no ditch like there is in front of the plaintiff's property anywhere else along the road, and Mr. R.F. Thompson stated that he would hate to have to live there the rest of his life and "look at those ditches". He estimates the damage at around $1,000 to $1,200 and says he would not have them there if the place was his. Asked on cross-examination if the reason he gave for estimating such damage was that he would hate to live there the rest of his life and look at the ditches, he replied in rather characteristic fashion: "Yes, `cause a man's home you know is something more than just a piece of land."
The testimony of these witnesses who know the conditions and the surrounding circumstances better than we are able to judge them from reading the record cannot be easily brushed aside. In a measure, their estimate of the damage to the property is confirmed by the trial judge who, we are informed by brief of counsel for plaintiff, made a personal inspection of the premises before making his award of $500. This amount appears to us to be fair and reasonable.
Having concluded that the judgment appealed from is correct, it will be affirmed with a slight modification with regard to the costs. Under the provisions of Act No. 135 of 1936, the defendant is relieved from the payment of all court costs other than the stenographer's fees for taking the testimony. See Guercio et al. v. State, La.App., 15 So.2d 170. To the extent that the judgment imposed all costs on the defendant therefore, it is amended; otherwise it stands affirmed. *Page 607