This is a suit for damages for personal injuries and for other damages arising out of an accident which occurred at about 5 o'clock in the afternoon of June 3, 1939, on the Airline Highway leading out of Baton Rouge towards New Orleans and at a distance of about five miles from the southern limits of the City of Baton Rouge.
Mrs. Marie Wells, wife of Edgar Wells, was driving a Plymouth Sedan automobile south on the highway, or in the direction of New Orleans. She intended to make a left hand turn to go into a private driveway leading to the home of Mrs. William Ross on the eastern side of the highway. In the petition it is alleged that she brought her car to a stop at the point opposite the said driveway with part of her automobile off the paved section of the highway on the western dirt, grass or gravelled shoulder thereof. It is further alleged that the automobile remained in that position until it was struck from the rear by an automobile being driven by Leon Joseph Torregrossa, Jr., minor son of Mrs. Cecile Fortier Torregrossa and her late husband, Leon Joseph Torregrossa, Sr.
From the petition of the plaintiffs it appears that Mrs. Torregrossa had qualified as natural tutrix of her said minor son and that he resided with her in the Parish of East Baton Rouge.
Plaintiffs aver that young Torregrossa had been driving south on the highway also and struck plaintiffs' car a terrific blow on the rear. He is charged with negligence in driving his automobile excessively fast, at a rate of speed said to have been sixty to seventy miles an hour, in failing to keep a proper lookout, in crashing into the rear end of a car which was properly and lawfully stopped on the right hand side of the highway with part of its body on the shoulder and in plain sight and view of traffic approaching it from the rear, and also in failing to turn slightly to his left in order to safely pass by the car which he was overtaking. In the alternative plaintiffs plead the rule of last clear chance.
The injuries sustained by Mrs. Wells and those which resulted from the accident as well as the treatment which she had to undergo are set out in great detail in the petition. She avers that she is entitled to recover in her own behalf from young Torregrossa, through his natural tutrix, Mrs. Cecile Fortier Torregrossa, and from the said Mrs. Cecile Fortier Torregrossa, as well as from the Home Indemnity Company which carried public liability insurance on the Torregrossa car, in solido, the sum of $40,000, of which amount $15,000 is claimed for pain and suffering and $25,000 for permanent injuries and disabilities. Plaintiff, Edgar Wells, the husband, claims to recover as head and master of the community which existed between himself and his said wife, the sum of $604.95 for doctors and hospital bills incurred in her treatment, $120.30 for damage to the automobile and $7 for having had to have it towed from the scene of the accident into Baton Rouge; $23 for eyeglasses lost by his wife, $124 for nurses and for other incidental expenses incurred in her treatment in New Orleans amounting to the sum of $170.50. He also claims the sum of $581.25 for loss of salary of his wife during the time that she was unable to work as general helper in a store, $16,200 for loss of her future salary and $500 for future hospitalization and treatment which will become necessary in order to restore her to her former good health. The prayer of the petition therefore is for judgment in favor of Edgar Wells in the sum of $18,331.08 and in favor of Mrs. Wells for $40,000 against the defendants, in solido.
There was an exception of no cause or right of action aimed at certain allegations in the plaintiffs' petition which had reference to the demand for loss of salary of Mrs. Wells as a community debt, which, after hearing, was referred to the merits. An exception of vagueness, which had also been filed and submitted, was overruled.
The answer of the defendants admits that an accident occurred at the time and place alleged in the petition of the plaintiffs, but otherwise denies practically every other allegation of fact therein contained. It also admits that the Home Indemnity Company carried a policy of public liability insurance on the Torregrossa car to the extent of $5,000.
Further answering, the defendants deny negligence on the part of young Torregrossa and plead on his behalf that there was an *Page 455 
emergency created when Mrs. Wells suddenly and drastically reduced the speed of her car or stopped it without giving any signal that she intended to do so. In the alternative the defendants charge contributory negligence on the part of Mrs. Wells in suddenly stopping her car or reducing its speed without giving proper signal, and in doing so without first ascertaining if it could be made in safety and without affecting the movements of other vehicles on the highway; in stopping on the paved portion of the highway at a point where there was ample room on her right side shoulder and in not leaving a fifteen-foot clearance on her left side as required by Rule 15, Section 3 of Act No. 286 of 1938, the Statute regulating the driving and operating of motor vehicles on the public highways of this State.
After trial of the case on the issues as thus presented to it, the lower court rendered judgment in favor of Mrs. Wells in the sum of $4,000 and in favor of Edgar Wells in the sum of $1,089.23 as master of the community, against all defendants, in solido. From that judgment the defendants have taken and are prosecuting this devolutive appeal. The plaintiffs have answered the appeal asking for an increase in the amount of the award to Mrs. Wells to the sum of $10,000 and that in favor of Edgar Wells to the sum of $2,794.23.
The testimony in the case is somewhat voluminous, but whatever relates to the actual occurrence does not appear to be conflicting to any material degree. It is our opinion that it points clearly to the gross negligence of the young man who was driving the Torregrossa car and that such negligence was the proximate and the producing cause of the accident.
Mrs. Wells who worked at a place of business known as Twin Cedars at the junction of the Airline Highway, also known as the Jefferson Highway, and the highway leading to Hammond, and conducted as a grocery store, filling station and tourist cabins, was on her way to make a delivery of groceries to the home of Mrs. William Ross situated on the eastern side of the highway and therefore to her left as she drove south. It was somewhat early yet for a summer afternoon and therefore broad daylight. The pavement was absolutely dry and it is shown that Mrs. Wells was driving at a rate of speed between thirty and thirty-five miles per hour. As she approached the driveway leading to the Ross home, she extended her left hand out of the left side of her automobile as a signal that she intended either to stop, reduce her speed or make a left hand turn. The testimony shows, and it appears from certain photographs offered in evidence, that there is a grade or rise in the highway at that point for some two hundred feet or more, some of the witnesses even referring to the steepness as a hill. A preponderance of the testimony is to the effect that not only had Mrs. Wells pulled her automobile to her right hand side of the highway and had come to an actual stop, but that both of the right wheels of the car were entirely off the highway and onto the shoulder to the west. That is so because Mrs. Wells intended to make a left hand turn to go into the Ross private driveway, and just at that moment found herself faced with two automobiles coming from the opposite direction and necessarily she was not going to make or attempt to make the turn until those cars had safely passed by her. She testifies positively that she looked in the rear vision mirror of her automobile to see if any vehicles were approaching her from the rear before she came to a stop. On looking at first she did not see any car and on taking a second glance she saw the Torregrossa car which was then halfway up the grade in the highway, as she imagines, at which time she had her hand out giving the signal of her intention to slow down and stop her car.
It is shown that young Torregrossa was driving his mother's Ford automobile at a rapid rate of speed, which we would say the testimony shows to have been from fifty to sixty miles per hour. He himself admits that he was going fifty when he was in what he refers to as the dip in the road. By his own testimony, when he was within twenty feet of the Wells car which he intended to pass, he noticed a car coming from the opposite direction and finding himself confronted with an inevitable collision with that car he cut back to his right, hoping no doubt to pass between it and the Wells car, but the left front fender of his car crashed into the rear of the Wells car and then the left rear end of his car struck another blow to the rear end of the car coming from the opposite direction, all three cars coming to a rest in a ditch on the west side of the highway.
The owner and the driver of the other car involved in the collision was Mr. Rhea *Page 456 
D. Percy, United States Engineer, who was on his way from New Orleans to Baton Rouge. According to his testimony the Wells car came to a stop in front of him and he assumed that it was waiting for him to pass before making a left hand turn into the driveway on the east side of the highway. At the same time, he says, he saw a car coming from the south about one hundred to one hundred and fifty feet away from the Wells car going pretty fast, and realizing that it couldn't stop in time without striking either the Wells car or his, he prepared himself by applying the brakes on his car and swerving it to the right as far as possible. At the moment he reached the car which was stopped or stopping on the highway, the driver of the other car swerved to his left in order to try to avoid striking that car but could not do so, and he struck it on the left rear fender. The blow had the effect of throwing the left end of the fast moving car into his, and the bumper caught into the bumper of his car and spun it around into the ditch. The testimony of this disinterested witness stands as a complete corroboration of the testimony of Mrs. Wells without the necessity of having to rely upon the testimony of another witness who testified for the plaintiff, Mrs. J.C. Benton, and whose testimony is criticized by counsel for the defendants on the ground that at the place where she was in her car in a lane some eight hundred feet south of the scene of the accident, it was impossible for her to have seen what took place. We believe moreover that the testimony of young Torregrossa himself carries a virtual admission of his own negligence for he states, in trying to explain how the accident happened, that he "just couldn't make it around. I don't remember why." A young man by the name of George Gregoire, who was in the Torregrossa car with young Torregrossa, testified as a witness in behalf of the defendants, but his testimony, if anything, tends more to show the negligence of the young man than his lack of any. As a matter of fact, we doubt that this young man saw very much of the accident because he says himself that he was not paying much attention, as at that moment he was getting ready to light a cigarette.
The defendants urge very strongly their plea of contributory negligence on the part of Mrs. Wells contending that she did nothing to prevent the accident, but the proof is from her testimony that when she looked in the rear vision mirror of her car and saw the Torregrossa car approaching her from the rear when she was confronted with the Percy car in front of her, she pulled in her left hand to brace herself in order to sustain the shock of the impending collision as well as she could. Assuming, as we have found, that she had given a signal and that her car was on the right hand side of the paved portion and with the two right wheels on the shoulder of the highway, we do not know what more she could have been expected to do in order to avoid the accident. It is also urged that Mrs. Wells was familiar with the conditions of the traffic on the highway at that point and for that reason she should have expected that there would be cars driving at a rapid rate of speed, but we are at a loss to understand how that could convict her of any negligence in this case when it appears that at the time of the accident, traffic was very light and she was driving her car in a very careful and prudent manner. We are fully convinced, as was the district judge, that the gross negligence of young Torregrossa was the sole and producing cause of the accident and that the defendants were properly held liable in damages to the plaintiff.
At the moment of the impact, Mrs. Wells did not seem to have suffered any injury of a serious nature or consequence. She was thrown against the steering wheel and the windshield of her automobile and showed no outward signs of physical injury. She was dazed or unconscious for a while, but recovered within a few minutes and even went on with the delivery to the customer to whose home she was going and then returned to her place of business. She thought it best to call in the family physician, Dr. J.T. Lewis, and after he examined her he advised her to go to the hospital to have X-rays made, as he was concerned about a probable injury to the spine. She went to the Baton Rouge General Hospital, returning home the following day and a few days thereafter developed a severe attack of nausea and vomiting. She was treated for about two weeks, but her condition showing no improvement, she was advised to return to the hospital for further treatment. She got a little better and was sent back home where she remained for about a month, but then she got progressively worse and her doctor found it necessary to refer her to a specialist in New Orleans. Her treatment in New Orleans covered a long period in and out of *Page 457 
Touro Infirmary in that City, with only slight improvement despite what seems to have been the best of medical care and attention. Dr. Lewis is of the opinion that she is suffering from traumatic neurosis and he hesitates to express an opinion as to what the outcome will be. He had hopes that she would make a complete recovery as she seemed to be improving until she had a serious set back just a month prior to the trial of her case.
It is seriously contended by counsel for the defendants that the physical ailments complained of by Mrs. Wells are not the result of the accident as the doctors have always failed to find any objective symptoms of an injury to any organ and they seem unable to say exactly what is her trouble except for Dr. Lewis' diagnosis that she is suffering from traumatic neurosis. Nevertheless the testimony definitely shows that prior to her injury Mrs. Wells was a person of good health, strong and robust and able to do rather strenuous work. Since, she has lost some fifty pounds or more in weight and is unable to do anything in the line of the work she was accustomed to do before. In the absence of any other explanation or cause which might suggest itself, we are bound to conclude from the medical testimony, that this lady's present condition is due to the accident and the injury which she received at the time. There may have been some lurking malady in her system which may have been brought into activity by the shock of the accident, or it may be that her nervous system has become unbalanced and that, in the opinion of the doctors, may have produced the trouble which she complains of. In either case the condition is traceable directly to the accident and therefore she is entitled to recover whatever damages may be considered proper and sufficient to compensate her.
The defendants urge that the award of $4,000 made by the district judge is excessive when compared to that of $1,000 to the plaintiff in the case of Klein v. Medical Building Realty Co., Inc., La.App., 147 So. 122, which involved a condition of traumatic hysteria. It would appear from a reading of the opinion of the Court that there was found to be a distinction between traumatic hysteria and traumatic neurosis and it was held that the plaintiff was clearly not a victim of traumatic neurosis. Unlike in this case, the doctors seemed to have been divided in their opinion concerning the plaintiff's condition, one of them having concluded that he was a malingerer. We do not think that the award made in that case should serve as a basis for the award to be made to the plaintiff, Mrs. Wells, and whilst the $4,000 allowed her in the judgment of the district court for her personal injuries, pain, suffering and permanent impairment to her health can be said to be very substantial, we do not think that it is excessive.
The award made to Edgar Wells, as head and master of the community, in the sum of $1,089.23 is supported by proof of the items on which it is based. The district judge refused to allow anything to him for loss of salary of his wife as claimed in the petition, which demand gave rise to the exception of no right or cause of action. He was of the opinion that this claim could not be allowed for the reason that at the time of the accident, Mr. Wells owned an interest in the business conducted under the name of Twin Cedars from which his wife drew her salary. The testimony shows that there was some sort of agreement between Mr. Wells and Mr. W.H. Varnado, the owner of the property, under which Mr. Wells was eventually to become a part owner in the property and business. Mr. Wells drew $100 a month out of the business, presumably as salary, but under the agreement that amount was put back into the business each month as part of the payment of the purchase price to be paid by him. These payments have been made for more than four years, and therefore they represent quite a substantial investment in the business on the part of Mr. Wells, and it is shown that he was manager and operated it as part owner with the assistance of Mrs. Wells, who even had the authority to sign checks on the bank in which the accounts of the business were kept.
As we find the judgment appealed from to be correct on both the question of liability and that of the award made with respect to the different demands, it stands affirmed at the costs of the defendants, appellants herein. *Page 705