Under authority of Act 335 of 1942, the plaintiffs brought this suit against the State, through the Department of Highways to recover the sum of $850 as damages on account of the alleged negligence of a driver of one of the Highway Department trucks in running into and damaging a Ford car while it was parked on private property off the highway on November 27, 1941, about fourteen miles from Plaquemine. The sum of $500 is claimed as damage to the Ford car and the sum of $350 as damages for the loss of the use of the car. The latter item of damage has been abandoned, and as the defendant does not seriously question the negligence on the part of the driver of the highway truck, the only matter contested and passed on in the trial court was the amount of damage to the automobile.
The trial court awarded plaintiff judgment for $400, with legal interest from judicial demand and all cost of the suit. The defendant has appealed and in this court insists that the award is excessive, and also insists that interest and cost, other than stenographer's fees, cannot be taxed against the State.
The Highway truck was being driven so fast that it got out of control of the driver, went off the road across a ditch, through a fence and struck plaintiffs' Ford car standing in a lane some ten feet from the highway. The Ford was almost completely demolished. Two tires and the radio were saved from the wrecked car and the value of the car after the wreck as junk was placed at $40 or $50. The trial court found the value of the car before the wreck to be $500, and deducted the estimated value of the tires and radio and the junk value of the wrecked car.
The car was a 1937 model Fordor sedan purchased in December 1936, for the price of $898.08, including carrying charges. The cash price of the car at the time of sale appears to have been a little less than $800. At the time of the accident, the car was nearly five years old and had been driven about 60,000 miles. The son of the plaintiffs, who was using the car in his business at the time of the accident, testified that the car was in good condition; that a set of rings had been put in the car.
Mr. Jumonville, who was in the automobile business for seventeen years before he went into the scrap iron and junk business, testified that if the car was in as good condition as plaintiffs' son said it was at the time of the accident, it was worth around $600. Mr. Brockhoeft, another automobile dealer, testified that if the car was in good condition at the time of the accident with good tires, that model car in November, 1941, was worth from $550 to $600.
An equipment inspector for the Highway Department testified that he saw this car the day after the wreck; that from appearances, the car had not been very well taken care of. The motor was dirty, and the car had not been properly lubricated and had a faded color indicating that it had been out in the weather a lot, and certain parts of the car were worn. Mr. Burton, an automobile dealer of several years experience, testified that, according to the used car guide gotten out by the National Automobile Dealers Association from average retail prices of used cars in this *Page 172 
territory, this car at the time of the accident was worth $195. He said that the car could have been worth as much as $300 if it was in first-class condition. He admitted, as the other two dealers testified, that the automobile dealers in this territory do not follow this guide in making sales of used cars; that the sales value depends on the condition of the particular car.
The evidence justifies the conclusion that this car was in fair or average condition for a car of its age and use. According to Burton it was worth $195; according to the other two dealers it was worth from $550 to $600, their estimates being based on the assumption that the car was in good condition.
A consideration of the evidence as to the condition and value of this car at the time of the accident leads us to the conclusion that its value was somewhere between the rather low estimate of Mr. Burton and the rather high estimate made by the other two men who testified on this point. We have concluded to fix the value of the car at the sum of $350 from which should be deducted the value of the salvage and the value of two tires and the radio saved from the wreck, which the trial judge placed at a total of $100, and which we think is a reasonable allowance. The award will therefore be reduced to the sum of $250.
Learned counsel for the defendant contend that the State or its agencies cannot be required to pay interest in the absence of a contract or a statute providing for the payment of interest. Act 206 of 1916 provides that legal interest shall attach on all judgments sounding in damages, ex delicto, which may be rendered by any of the courts of this State. In the case of Caldwell v. City of Shreveport, 150 La. 465, 90 So. 763, the Supreme Court held that the plaintiff in the tort action against the city had a right to recover legal interest from judicial demand as an absolute right under the above statute. When the act was passed authorizing plaintiffs to bring this tort action against the State, through the Department of Highways, the Legislature was aware of its former act authorizing the recovery of legal interest from judicial demand in a tort action as an absolute right, and it must be assumed that the Legislature intended that any judgment rendered in favor of the plaintiff would bear legal interest from judicial demand as required by the act of 1916. See Harrison et al. v. Louisiana Highway Commission, 202 La. 345,11 So.2d 612.
Under the provisions of Act 135 of 1936, the State, as well as its political subdivisions, is exempted from the payment of court costs, other than stenographers' cost for taking testimony, in any judicial proceeding brought by or against the State or any of its political subdivisions. While it has been held that this act does not exempt the State from the payment of costs in expropriation proceedings or to recover damages for property taken under the power of eminent domain, there seems to be no reason why the act should not apply in an action like the present to recover damages for an alleged tort. As already stated, with reference to the right of plaintiffs to recover legal interest, when the Legislature passed the act authorizing the plaintiffs to bring this suit, it was aware of the act of 1936 which exempts the State and its political subdivisions from the payment of court costs, and if the Legislature intended to make the State liable for the court costs notwithstanding the act of 1936, it is reasonable to assume that special provision would have been made for the payment of such costs when plaintiffs were authorized to bring this suit. Whatever objection may be urged to the policy of the act of 1936 in requiring the State or its political subdivisions to pay fees of one class of court officials and not of others, is a matter with which we are not presently concerned, and for that reason we are compelled to apply the act as it is written.
For the reasons assigned, it is ordered that the judgment appealed from be amended by reducing the amount thereof from $400 to the sum of $250, and by relieving the defendant from the payment of all court costs other than the stenographer's fees for taking the testimony, and in all other respects the judgment is affirmed; plaintiffs to pay the costs of the appeal. *Page 173