The plaintiffs, G.M. Lively and his wife, Mrs. G.M. Lively, under authority of Act 355 of 1940, filed this suit against the State of Louisiana, through the Department of Highways, to recover damages which they both claim to have sustained by reason of an accident on July 10, 1937, in which a collision took place between a car in which Mrs. Lively was riding and a highway truck driven by an employee of the Highway Commission. Mr. Lively sued for the sum of $1,807.50 for damages to the car in which *Page 618 
his wife was riding and which he claimed to own, medical expenses incurred by him on account of personal injuries received by his wife and the expense incurred by him for servant hire occasioned by the inability of his wife to carry on her household duties after her injury. Mrs. Lively sued for the sum of $5,000 for pain and suffering, disability resulting from the accident and permanent impairment in the use of her right arm.
The trial court rendered judgment in favor of Mrs. Lively for her personal injuries in the sum of $1,500 and in favor of G.M. Lively for the sum of $457.50. The defendant was ordered to pay only the stenographer's cost for taking the testimony, and plaintiffs were ordered to pay all other costs. No interest was allowed either plaintiff in the judgment. The defendant appealed, and both plaintiffs answered the appeal, asking that the judgment be amended by increasing the awards to the amount claimed in the petition with interest from judicial demand, and by relieving them from the payment of any court cost.
The accident occurred in the town of Columbia, Caldwell Parish, just south of the river running through the town. U.S. Highway 165 is paved and runs in a northerly and southerly direction at the place where the accident occurred. There is a filling station some 30 feet west of this highway, and about 100 feet north of this filling station a gravel road leads from the highway in a southwesterly direction toward the depot, the junction of the two roads forming an acute or V shaped angle. The space between the filling station and the junction of the roads, as well as that between the filling station and the paved highway on the east, is graveled. The highway truck was coming north on the paved highway down a slight incline, and the car in which Mrs. Lively was riding was going south on this highway. She was sitting on the back seat of the car, and her daughter, Mrs. Watson, was driving the car.
There is little dispute as to how the accident occurred. All of the eye witnesses to the accident — Mrs. Watson, Mrs. Lively, a Mrs. Hill and the operator of the filling station — were called by the plaintiffs, and their testimony in the main is in agreement as to how the accident happened. The defendant did not produce any witnesses, not even the driver of the highway truck whose location in the state was known. In fact, we gather from the record that the negligence of the driver of the highway truck is practically conceded. He was coming north on the paved road, and when he reached a point some distance south of the filling station — estimated by the station operator at 60 feet and by Mrs. Hill between 50 and 100 yards — he pulled his truck to the left side of the road directly in the path of the oncoming car driven by Mrs. Watson. The truck driver was intending to make a sharp left turn into the gravel road by crossing over the gravel area to the north of the filling station, as was the custom, instead of going to the junction and making an abrupt turn to the left to get into the gravel road. Mrs. Watson pulled her car to the right and had the right side of her car completely off the pavement when the truck struck her car on the left side and threw it against one of the gas pumps on the east side of the filling station.
There is evidence to the effect that the truck driver was looking back as he pulled to the left of the road. He did not get out of his truck after the accident and made no effort whatsoever to give any assistance or make an explanation of his actions. The actions and condition of the truck driver led the witnesses who saw him to believe that he was under the influence of intoxicating liquor. The fact that he attempted to make a sharp left hand turn on a much traveled highway right in front of an oncoming car leads to no other conclusion but that he was either under the influence of intoxicating liquor, or else he was giving no attention whatever to his driving.
In a supplemental answer filed by the defendant after the testimony of Mrs. Hill was taken by deposition, the defense is made that Mrs. Watson was driving the car as the agent or employee of the plaintiffs, and that the sole and proximate cause of the accident was the negligence of Mrs. Watson in failing to stop the car she was driving in time to avoid the accident after she saw or should have seen that the truck driver intended to make the left turn in front of her. The alleged contributory negligence of Mrs. Watson is pleaded in the alternative as a bar to recovery by either plaintiff.
The substance of Mrs. Watson's testimony as to how the accident occurred is as follows: She was driving around 20 miles per hour, and she noticed the truck coming from the opposite direction; that the driver was looking back and began to pull to his left and got about in the middle of the road. When she realized that he was going to *Page 619 
turn to his left, she sounded her horn and pulled her car to the right almost completely off the pavement in front of the filling station, and the truck driver continued to his left and struck the left side of her car and knocked it against one of the gas pumps at the station, injuring her mother who was sitting in the back seat of the car. She could not fix the distance the truck was from her when the driver began to turn across the road, but she says he was too close for her to have stopped her car. She fixed a distance which was estimated at 18 feet that the truck was from her when it began to turn left. She pulled to her right in an effort to get out of his way. When she first saw the truck begin to pull to its left, it was traveling almost over the center line and she did not know that he was going to make a left turn until he had gotten too close to her car for her to stop or get out of his way.
Making a left hand turn on a much traveled highway in the face of oncoming traffic is an exceedingly dangerous operation and places on the person making such a turn the duty of seeing that the turn can be made in safety, and a motorist has a right to assume that another motorist coming from the opposite direction will not attempt to make a left hand turn unless it can be made in safety, and this presumption may be relied on until the actions of the motorist attempting such a turn indicate that he is not going to observe the law. If we take the estimate of 60 feet given by the filling station operator as the distance that the truck was from the point of impact when it began to turn left, it is obvious that Mrs. Watson was too close to stop her car or avoid the truck in the emergency created solely by the negligence of the truck driver. She pulled to her right and tried to get out of the way of the truck, which was all that she could do under the circumstances. To say that the truck would not have struck her had she stopped at or near the point of impact is pure speculation and conjecture. Our opinion is that the negligence of the truck driver was the sole and proximate cause of the accident. Grasser v. Cunningham et al., La.App., 200 So. 658.
Having reached the conclusion that Mrs. Watson was not guilty of any contributory negligence, it is unnecessary to consider whether or not she was the agent or employee of the plaintiffs.
Mrs. Lively's right collar bone was broken, and she received body bruises and nervous shock. She was confined to her bed for six weeks, and continues to suffer from nervousness and has an impairment in the use of her right arm. She was 55 years of age at the time of the accident and was able to do her household work and also did some quilting which produced some revenue. Since the accident, her ability to do her usual household work and quilting has been impaired. We have decided to increase her award to the sum of $2,000.
On the claim of Mr. Lively for damage to the car driven by Mrs. Watson, we agree with the trial judge that he has failed to prove that he owned this car. He testified that the automobile belonged to him and his daughter, Mrs. Watson; that he helped his daughter buy it in her name; that he bought the car in her name and she helped make the initial payment on it and made two other payments, and after that he paid for the car. His daughter worked for a few months and lived with him. The car was used as a family car. Mrs. Watson testified positively that the car belonged to her and that her father was helping her to pay for it. There is an invoice in the record showing that this car was purchased in the name of Mrs. Watson on December 20, 1935. In view of this testimony, we do not see how Mr. Lively can recover as owner of the car.
It seems to be conceded by counsel for the defendant that Lively proved the item of $67.50 for medical expenses in the treatment of his wife on account of her injuries. He claims an item of $390 for extra servant hire occasioned by his wife's inability to perform her household duties after the accident and up to the date of filing the suit, and the further sum of $1,000 for estimated future expense for the same purpose. The trial court allowed the expense of $390, and counsel for plaintiffs concede that there is no proof to justify the allowance of the estimated future expense for servant hire, but insist that an allowance should be made up to the date of trial.
Counsel for defendant contend that the loss of services of the wife occasioned by her injuries is not a proper item of damage to be recovered by the husband; that the husband cannot recover from a third person damages alleged to have been suffered by the husband as a result of loss of the services of his wife by reason of an injury sustained by his wife because of the fault of such third person. The two cases of Moulin v. Monteleone, 165 La. 169,115 So. 447 *Page 620 
and Wells et al. v. Home Indemnity Company et al., La.App.,1 So.2d 453, are cited and relied on in support of this contention.
The loss of the services of the wife because of her inability to carry on her household work is just as much a loss to the community as would be the loss of the services of the husband to the community occasioned by an injury to the husband. As head and master of the community, the husband has the right to recover for the community any loss occasioned by an injury to either the husband or the wife. While in the Moulin-Monteleone case, supra, the court did make the statement that the husband has no kind of property in the companionship, services, or affection of the wife, that case involved the alienation of the affections of the wife, and the word "services" used in discussing the case did not refer to the labor of the wife and her services in contributing to the acquets and gains of the community.
While the statement made in the syllabus and in the opinion in the Wells-Home Idemnity Company case, supra, appears to lend some support to defendant's contention on this point, a re-examination of the record in that suit shows that the basis for the holding was that the husband was in reality paying or allowing his wife $75 per month out of the business which he owned, or in which he had an interest; that he did not pay this amount to a third person employed to do the work which his wife was doing, and for that reason the husband did not prove that he sustained any actual loss on account of the disability of his wife.
The record shows that Lively paid a servant $10 per month from the date of the accident, July 10, 1937, to the date of trial, November 5, 1941, which was made necessary because of the inability of his wife to do her usual household work during that period. This was a distinct loss to the community, and the husband is entitled to recover for this loss. The period covered 51.8 months, making a total of $518 paid during that period.
Following our ruling in the recent case of Dominick Guercio et ux. v. State of Louisiana, through the Department of Highways,15 So.2d 170, we hold that the plaintiffs are entitled to recover legal interest on their respective awards from judicial demand until paid.
The lower court was correct in condemning the State to pay the stenographer's cost for taking the testimony, but was in error in casting plaintiffs for all other costs. We know of no law which permits the imposition of court cost on a successful litigant. On the contrary, Article 551 of the Code of Practice provides that the party in whose favor a judgment is rendered shall have the right to tax the cost against the one against whom the judgment is rendered, even though the judgment does not condemn the defendant for the cost. The only reason the defendant in this case cannot be condemned for all the cost is because Act 135 of 1936 relieves the State and its political subdivisions from the payment of all court cost other than stenographer's fees for taking the testimony. As we said in the case of Guercio v. State, supra, we are not concerned with the reason the Legislature had for singling out one class of court officials and permitting them to recover their cost against the State.
For the reasons assigned, it is ordered that the judgment appealed from be amended by increasing the award of Mrs. G.M. Lively from the sum of $1,500 to the sum of $2,000; and by increasing the award of G.M. Lively from the sum of $457.50 to the sum of $585.50; that said judgment be further amended by allowing the above plaintiffs to recover legal interest on their respective awards from judicial demand until paid, and by relieving them from the payment of any court cost; and as thus amended, the judgment is affirmed. *Page 637