Lucille EVANS, Wife of, and Reverend Fred Lewis, Plaintiffs,

v.

ATLANTIC REFINING COMPANY and Great American Indemnity Company, Defendants.

Civ. A. No. 5700.

United States District Court
E. D. Louisiana,
New Orleans Division.

April 17, 1957.

Wagner & Jarreau, J. Stanley Wagner, New Orleans, La., for plaintiffs.

Christovich & Kearney, A. R. Christovich, Jr., New Orleans, La., for defendants.

J. SKELLY WRIGHT, District Judge.

On March 1, 1955, at 12:15 A. M. on Highway 90, approximately six miles west of Franklin, Louisiana, near the intersection of Charenton Road, an automobile driven by Reverend Fred Lewis was in collision with a car driven by one Charles C. Evans, an employee of the Atlantic Refining Company. Mrs. Lewis was a guest passenger in the Lewis car and was severely injured in the collision. In this action she sues for damages against Evans' employer and its insurer, charging negligence on his part which caused the accident. Reverend Lewis is suing, as head and master of the marital community, for hospital bills, doctors' bills and loss of earnings of his wife, resulting from her injuries.

At the time of the accident, the Lewis car was proceeding west on Highway 90, an arterial highway of the state of Louisiana. As the car was approaching the intersection of Charenton Road, an approach which was entirely unmarked by road signs of any kind, the driver thereof was confronted by what proved to be the Evans car coming in the opposite di-

rection on Highway 90 and drifting across the highway from right to left into the westbound traffic lane. Lewis applied his brakes and turned his car to his right shoulder of the highway, but the Evans car continued across the highway onto the shoulder and collided head-on with the Lewis car. The collision occurred with both cars entirely off the highway and on the shoulder, the right side of Evans' car being parallel to the highway one to three feet off the concrete slab, while the Lewis car, also parallel to the highway, was slightly closer to the concrete slab.

Evans testified that he lived on Charenton Road and that at the time of the accident he was returning from a job site of his employer located in the general area. He saw the Lewis car approaching in the opposite direction, but he was confident he could cut across the highway and into the westernmost part of Charenton Road without danger of collision with the Lewis vehicle. He stated that two days after the accident he came back to the scene, and with a hub cap and a tire print in the gravel shoulder as landmarks, he drew a sketch which showed the location of his car at the time of the accident as some nine feet off the concrete slab. This calculation placed the left side of his car, according to his testimony and his diagram, in the ditch on the north side of Highway 90. He maintained that at the time of the accident he was already in Charenton Road some 140 feet.

Charenton Road runs generally in a northeasterly direction, beginning with Highway 90. The intersection with the highway is apparently broader than the width of the road because of the obtuse angle at which the road runs off the highway to the northeast. In fact, it would appear that the north shoulder of Highway 90, coming from the east, the direction in which the Evans car was traveling, is almost indistinguishable from the road as it reaches the highway. It was on this part of the shoulder that Evans sought to travel after getting across the highway before the approach of the Lewis car. Evans stoutly maintains that he was in Charenton Road at the time of the accident and that Reverend Lewis came off the highway into the road to collide with him. Reverend Lewis just as stoutly maintains that the accident occurred at least 75 feet west of the entrance to Charenton Road.

The testimony of Reverend Lewis is supported by Officer Pontiff, a state trooper, who came to the scene of the accident immediately thereafter in response to a radio call. Pontiff's testimony shows that the accident occurred on the shoulder of Highway 90, seventy-eight feet west of the Charenton Road intersection and 158 feet west of the stop sign on Charenton Road. Officer Pontiff also testified that after the accident, both cars were on the eight-foot shoulder, parallel to the concrete slab, one to three feet off, still facing in opposite directions. Officer Pontiff, after interviewing both drivers and studying the physical facts, charged Evans with reckless driving in connection with the accident and Evans entered a plea of guilty to the charge sometime later in open court.

■■ Under Louisiana law, when a left-hand turn is being made and an accident occurs, the burden "rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence." Codifer v. Occhipinti, La.App., 57 So.2d 697, 699. The driver attempting the left-hand turn must make certain that the turn can be made without danger to normal overtaking or oncoming traffic, and he must yield the right of way to such vehicles. American Fidelity & Casualty Company v. Drexler, 5 Cir., 220 F.2d 930; Messina v. Audubon Ins. Co., La.App., 67 So.2d 143; Martin v. Globe Indemnity Co., La.App., 64 So.2d 257; Bergeron v. Department of Highways, La.App., 50 So.2d 337; Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264; Lane v. Bourgeois, La.App., 28 So.2d 91; Lively v. State, La.App., 15 So.2d 617; Rogers v. F. Strauss & Son, La.App., 194 So. 136. This is par-

ticularly true where, as here, the left turn is being made into an unmarked road. American Fidelity & Casualty Company v. Drexler, supra; Dudley v. Surles, La.App., 11 So.2d 70; Employers Fire Ins. Co. v. Langley, La.App., 197 So. 178. Moreover, LSA–R.S. 32:235(B) reads, in pertinent part, that a driver of a vehicle "intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left."

■ Applying the foregoing principles here, there can be no question but that Evans was guilty of negligence which caused this accident. Instead of remaining in his right-hand lane until he passed the center of the intersection, he turned left diagonally across the highway in the face of the oncoming Lewis car. Lewis, unaware of Evans' intentions, did what a reasonably prudent man would have done instinctively in the circumstances. He pulled to his right-hand shoulder of the road. Evans continued across the highway into the same shoulder and the Lewis vehicle. Not only has Evans failed to acquit himself of the heavy burden which rests on the driver of every vehicle who has an accident in making a left-hand turn, the evidence, the testimony of Lewis and Pontiff, and the physical facts, show conclusively that it was his negligence and his negligence alone which caused this accident.

■ Defendant's contention that Evans was not making a left-hand turn, that he was merely turning off the highway onto a road, which for a short distance at least, runs almost parallel to the highway, and that, consequently, the statutes and jurisprudence which place a heavy burden on left turn drivers are not applicable to Evans, is unavailing.

Assuming that Evans was not making a pure left-hand turn, the fact remains that he crossed the highway into the westbound traffic lane in the face of oncoming traffic. That act alone was sufficient to cast the defendants in judgment for LSA–R.S. 32:236 reads in pertinent part as follows: "The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety. * * *" Certainly Evans turned from a direct line of the highway and just as certainly the movement was not made in safety. Toney v. Burris, La.App., 45 So.2d 438; Malone v. Fletcher, La.App., 44 So.2d 352; Fields v. Owens, La.App., 186 So. 849. His violation of the statute was negligence per se,[1] and it was the proximate cause of the accident.

■ On the question of quantum, it appears that the plaintiff, Lucille Lewis, suffered the following injuries: concussion of the brain; severe shock; extensive lacerations and deep cuts across both eyelids, over right side of upper lip and left side of chin, center of the forehead and completely across the right knee cap; comminuted fracture of the distal end of the right radius with the fracture lines extending into the articular surface of the radius with slight displacement of the fragments together with slight impaction; extensive comminuted fracture of the lower third of the femur, both supra-condylar and inter-condylar with anterior angulation at the fracture site and some impaction. Because of these injuries, she underwent eight hours of emergency treatment immediately after the accident and was confined to the hospital in traction for a period of forty-eight days. Although the estimates by the doctors vary from 5 to 50%, admittedly she has a partial, permanent disability in both her left leg, in the area of the knee, and her right wrist. She is entitled to $13,000 in damages for her injuries.

1. Holliday v. Hartford Acc. & Indemnity Co., La.App., 38 So.2d 235; Hanson v. Great Am. Indemnity Co., La.App., 33 So. 2d 549.

610

■■ Reverend Lewis, as head and master of the community, is entitled to reimbursement of hospital bill of $1,010.20 and doctors' bills of $639. No damages are allowed for loss of earnings because the proof shows that Mrs. Lewis had not taught school for many years and that, although she had made inquiries with school officials regarding the possibility of returning to teaching, the proof of this item is too conjectural for consideration.

Judgment for plaintiff.