367 So.2d 882 (1978)
Miguel MARCELENO, Sr., et al.
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, et al.
David HOGAN and Kathleen Diane Hogan
v.
STATE of Louisiana, DEPARTMENT OF HIGHWAYS, et al.
Nos. 13714, 13715.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1978.
Rehearings Denied February 28, 1979.
Writ Refused April 23, 1979.
*884 Robert P. McLeod, Barbara Danos, Monroe, for Miguel Marceleno, Sr., individually and as natural tutor of Miguel Marceleno, Jr., Rodney Inez Marceleno, Ineosenta Marie Marceleno, Sondra Elita Marceleno, Placida Maria Marceleno and as administrator of the Succession of Glenda Jean Jeffers Marceleno-plaintiffs-defendants-third party plaintiffs-third party defendants-appellants-appellees.
Rankin & Yeldell, A Professional Law Corp. by James E. Yeldell and Charles E. Herring, Jr., Bastrop, for David Hogan and Kathleen Diane Hogan-plaintiffs-appellants-appellees.
Philip K. Jones, Marshall W. Wroten, Robert J. Jones, Doran & Kivett by William J. Doran, Jr., Baton Rouge, for State of Louisiana, Dept. of Transp. and Development (formerly State of Louisiana, Dept. of Highways)-defendant-third party plaintiff-third party defendant-defendant in intervention-appellant-appellee.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, Jr., Monroe, for Raymond C. Roberts and Northwestern Nat. Ins. Co.-defendants-third party plaintiffs-third party defendants-plaintiffs in reconvention-intervenors-appellees.
Before BOLIN, HALL and JONES, JJ.
En Banc. Rehearings Denied February 28, 1979.
HALL, Judge.
These suits for damages arose out of an intersectional collision between two vehicles which occurred while the malfunctioning traffic light at the intersection was green for traffic on both intersecting streets. After trial of the multiple claims and defenses of the parties involved, the trial court held that the drivers of the two vehicles were free from fault and that the sole legal cause of the accident was the negligence of the Department of Highways which had responsibility for the maintenance and operation of the traffic light.
From judgments rendered against it the Department of Highways appealed, specifying as error the trial court's finding of negligence on its part, the failure of the trial court to find negligence on the part of the drivers of the vehicles, the excessiveness of the awards for damages, and the assessment of all costs against the Department. The plaintiffs, survivors of the driver of one of the vehicles and passengers in that vehicle, also appealed, specifying as error the failure of the trial court to find the driver of the other vehicle negligent and the inadequacy of the awards. We affirm the judgments of the district court in all respects.
*885 The accident occurred in Bastrop on November 18, 1974 at approximately 11:30 a. m., at the intersection of North Washington Street (a state highway) and Haynie Street. The vehicles involved were a large 1967 Chevrolet milk truck owned and driven by Raymond C. Roberts and a 1967 Buick automobile owned by Miguel Marceleno and driven by his wife, Glenda Marceleno. Riding as a passenger in the Roberts truck was Sammie Peoples. Passengers in the Marceleno vehicle were Mrs. Kathleen Hogan and three of the Marcelenos' children, Placida, Sondra and Ineosenta. Prior to the accident the Roberts vehicle was proceeding south on North Washington Street and the Marceleno vehicle was proceeding east on Haynie Street.
Traffic at the intersection was normally controlled by a semaphore-type traffic signal which remains green for North Washington Street, as the major artery, until traffic on the intersecting streets activates the mechanism to change the light to green for those streets by running over a pressure pad in the roadway. Prior to the occurrence of the accident the traffic signal had malfunctioned. The malfunction was reported to city authorities and two days prior to the accident the city had deactivated the signal and placed "stop" signs at the intersection facing traffic on the nonfavored streets. The stop signs remained in place through the occurrence of this accident.
Approximately one hour before the accident occurred a highway crew arrived at the intersection for the purpose of repairing the traffic signal. They performed some repairs, reactivated the signal light, and were still at the intersection observing and working on the light at the time of the accident.
As Roberts approached the intersection traveling south on North Washington Street, the light changed from red to green and he proceeded into the intersection. Mrs. Marceleno, traveling east on Haynie Street, had been stopped for the red light and when the light turned green she proceeded into the intersection. The vehicles collided near the middle of the intersection. As a result of the collision Mrs. Marceleno was killed. The passengers in her automobile suffered personal injuries. The Roberts truck was damaged.
These suits were filed by Mr. Marceleno, individually and as tutor of his five minor children, and by Mr. and Mrs. Hogan. Named defendants in both suits were the State of Louisiana, Department of Highways, Raymond C. Roberts, and Roberts' insurer, Northwestern National Insurance Company. In the Hogan suit Mr. Marceleno and the Estate of Mrs. Marceleno were also named defendants. The defendants denied negligence, pled contributory negligence of Mrs. Marceleno, and, alternatively, filed third party demands against each other seeking indemnity or contribution. Roberts and his insurer also intervened for property damage to the truck.
In the Marceleno case judgment was rendered against the Highway Department as follows:
(1) In favor of Mr. Marceleno in the sum of $115,473, representing $60,000 for loss of love and affection as a result of Mrs. Marceleno's death, $53,000 for loss of his wife's services and $2,473 special damages;
(2) In favor of Mr. Marceleno as tutor of his five minor children in the sum of $35,000 each for loss of love and affection, plus $750 for Placida's personal injuries, $350 for Sondra's personal injuries and $2,500 for Ineosenta's personal injuries;
(3) In favor of Mr. Marceleno, individually and as tutor of his minor children, in the sum of $10,000 for Mrs. Marceleno's pain and suffering prior to her death; and
(4) In favor of Roberts and his insurer in the sum of $1,660.51 for damage to the truck.
In the Hogan suit judgment was rendered in favor of Mr. and Mrs. Hogan in the sum of $22,433.85, representing $12,500 for Mrs. Hogan's pain and suffering, $6,000 for lost wages, and $3,933.85 for medical expenses.
The third party demands were rejected. All costs were assessed against the Highway *886 Department, including expert witness fees.
Negligence
As found by the trial judge, the evidence overwhelmingly established that the traffic light was malfunctioning at the time of the accident in that it was showing green simultaneously for both North Washington Street and Haynie Street. The Highway Department takes no issue with this finding. The Highway Department contends, however, that at the time of the accident it was making a reasonable effort to repair the traffic signal and to restore its function. The evidence is to the contrary and supports the trial court's finding that the Highway Department was negligent in several respects.
The light at this intersection had an extensive history of malfunctioning and had been worked on by Highway Department employees on several occasions. The usual maintenance procedure was to remove the existing controller and replace it with another. On the Saturday night prior to the accident the light malfunctioned, hanging up on red for North Washington Street. A city employee went to the scene and being unable to correct the problem, secured two portable stop signs and placed one on Haynie (the street that intersects North Washington from the west) and one on Louisiana (the street which intersects North Washington on the east side). After placing the stop signs, he cut the light off, leaving traffic on the main thoroughfare of North Washington to proceed uncontrolled through the intersection. On the Monday morning of the accident he called the Highway Department and informed them that the light had malfunctioned.
A Highway Department engineer and another employee got to the scene about an hour prior to the accident. The Highway Department truck was parked on the north side of Haynie Street near the intersection. The Department employees tried to turn on a flashing light on top of the truck to help warn traffic but the light did not work. One of the Department employees directed his attention to the light on the truck, attempting to repair it.
The engineer, who had never before worked on this particular model or type controller, opened the control box located on a utility pole at the northwest corner of the intersection and taped some wires that appeared to have had the insulation burned off of them. He then turned the light on and he thought it commenced to cycle properly. The engineer removed the controller from its position, took the top off of it, and was holding it in his hand observing the relays operating when the accident occurred. The Highway Department employees did nothing to warn traffic while they were working with the light.
The trial court found that the malfunction of the light was due to defective maintenance of its equipment by the Highway Department. The court further found that the Highway Department was negligent in sending an inexperienced engineer to work on the light at a busy intersection, in failing to have the truck's flashing lights working, in parking the truck in a location that impeded the view of traffic, in positioning the door of the control box in such a manner as to impede view, in commencing operation of the light while it was still malfunctioning, in removing the protective cover of the controller followed by tilting and manipulating of it by an inexperienced engineer, and in doing the work without providing adequate signs, flagmen, or other warning devices for traffic at the intersection. The evidence fully supports the trial court's accurate analysis of evidence, findings of fact, and conclusions of negligence on the part of the Highway Department.
Both the Highway Department and the Marceleno and Hogan plaintiffs urge that the trial court erred in failing to find Roberts was negligent. Their arguments are principally that Roberts was driving at an excessive rate of speed, that Mrs. Marceleno preempted the intersection, and most particularly, that Roberts was familiar with the fact that the light had previously malfunctioned and should have taken precautions before entering the intersection.
*887 There is no evidence of excessive speed by Roberts, who was traveling well within the speed limit. He observed the light when he was approximately 400 to 500 feet north of the intersection, observed it to be red, and reduced his speed. When he reached a distance of approximately 50 feet from the light it changed to green and Roberts accelerated to proceed through the intersection. When he got almost to the intersection he observed the Marceleno car entering the intersection from his right. He hit his brakes, turned to the left in an attempt to avoid the collision, but to no avail.
When the light turned green, Roberts was entitled to assume that the light was red for traffic on the intersecting streets. He was entitled to assume that traffic on the intersecting streets would not enter the intersection against a red light. Having a green light, Roberts had no duty to look for traffic not yet within the intersection. The Marceleno automobile did not enter the intersection until Roberts was almost into it himself.
Roberts had knowledge that the light had malfunctioned on previous occasions. Bourgeois v. State, Through Dept. of Highways, 255 So.2d 861 (La.App. 4th Cir. 1971), writ refused 260 La. 1114, 258 So.2d 373 (1972) is cited as authority for the position that Roberts had a duty to exercise a high degree of caution as he approached the light. Bourgeois held that a motorist who passed under a malfunctioning light three hours before the accident was under an obligation to exercise diligent caution " . . . in recrossing this intersection in the absence of affirmative knowledge that the necessary repairs had been effected." Roberts had passed through the light on the same morning the accident occurred at which time it was cut off and not functioning. At the time of the accident Roberts observed the light red as he approached it and observed it turn to green. Under these circumstances he was entitled to believe that the necessary repairs had been made to the light and that it was in a proper functioning condition, as distinguished from its earlier totally nonfunctioning condition. The facts of this case are distinguishable from those found in Bourgeois. Faced with an apparently properly functioning green light, Roberts had no duty to look for traffic not yet within the intersection.
Roberts was not negligent and, as noted by the trial court, was the victim of the trap caused by the malfunctioning light.
The Highway Department and Roberts and his insurer urge that Mrs. Marceleno was contributorily negligent, particularly in failing to observe the truck before starting into the intersection and also because of her previous familiarity with the malfunctioning of the light. There is no significant evidence in the record to establish any prior knowledge on the part of Mrs. Marceleno concerning malfunction of the light, and that contention is without merit. When the light turned green for Mrs. Marceleno she proceeded into the intersection in a normal fashion. She had no duty to look for or discover approaching traffic not yet in the intersection and the evidence shows the truck was not yet in the intersection when she started out. She was entitled to assume that traffic approaching on the other street would stop. There was no negligence on her part.
Quantum
The Department contends the trial court erred in awarding Mr. Marceleno the sum of $53,000 for loss of services of his wife aside from and in addition to the award for $60,000 for loss of love and affection. It is argued that there is no precedent in Louisiana for such an award for loss of services, that services rendered by a wife to husband and children are part of and outward manifestations of love and affection and are not separately compensable, and that there is no evidence in this case that Mr. Marceleno has actually incurred any expense to replace these services.
Plaintiff Marceleno contends that the husband's loss of his wife's services is a real and substantial loss, and that based on the testimony of expert economists who testified *888 for both plaintiff and defendant the award should be increased. Several cases are cited as supporting such an award.
The trial court held:
"Another aspect of damages sought by Mr. Marceleno as a result of the death of his wife is the loss of her services aside from love and affection, i. e., cooking, cleaning, laundering, child care, etc. All of these things Mrs. Marceleno was doing prior to her death and they must still be done, but by someone else. . . .
"The Court is indeed mindful of the fact that an award in this area is speculative in nature and not calculable with mathematical certainty. However, the Court feels that there is no doubt that such vital services have been lost because of Mrs. Marceleno's death and a value award should be provided based on the evidence. The experts have given the Court definite factors and guides to consider in making an award based on common sense and good judgment. Therefore, the Court awards to Mr. Marceleno the sum of $53,000 for the loss of services of his wife aside from love and affection, which award the Court considers conservative and not unreasonable based on all the evidence. . . ."
The cases relied on by plaintiff are Ayala v. Bailey Electric Company, Inc., 318 So.2d 645 (La.App. 4th Cir. 1975); Davis v. Powell, 141 So.2d 679 (La.App. 1st Cir. 1962); Little v. State Farm Mutual Automobile Ins. Co., 136 So.2d 457 (La.App. 1st Cir. 1962); Lively v. State, 15 So.2d 617 (La. App. 1st Cir. 1943).
In Ayala, a widow recovered for the loss of her husband's services in managing and maintaining rental property which was their only source of income. There was evidence that she performed some of these services and was required to pay for some of these services after his death. The court held she was "entitled to damages for loss of her husband's services based on the pecuniary value of the benefits she would reasonably have expected, had her husband not died as a result of negligence. A method of measuring the value of this loss is by determining the cost of replacing the services." The court reduced an award of $25,200 for this item to $8,500, based on its analysis of the testimony of a real estate management expert as to the usual fees charged for these services and the decedent's life expectancy.
In Davis, the husband hired his wife's mother to perform domestic services during his wife's incapacity as the result of an accident. There was no payment prior to trial but the mother testified she expected to be paid $100 and the husband testified he was obligated to pay her. The court granted recovery. In Little, the court awarded the husband $693 for amounts paid to his wife's mother and their children while the wife was in the hospital. In Lively, the husband recovered $10 per month paid to a servant to replace the wife's household services during her incapacity.
The cited cases lend some support to plaintiff's position, but are distinguishable to some extent from the case before us. In all of the cited cases, there was evidence of actual payment for the replaced services. It should be noted that numerous cases have denied recovery where there was no evidence of such payment. In Ayala, the only wrongful death case cited, the services lost and replaced related directly to production of the family's sole source of income.
Many out-of-state and federal cases recognize loss of a wife's services as a distinct category of compensable pecuniary loss and have awarded damages to a husband based at least to some extent on expert evidence as to the value of or cost of replacing such services. Admissibility And Sufficiency Of Proof Of Value Of Housewife's Services, In Wrongful Death Action, 77 A.L.R.3d 1175 (1977); Excessiveness Or Adequacy Of Damages Awarded For Personal Injuries Resulting In Death Of Woman Engaged In Homemaking, 47 A.L.R.3d 971 (1973). It should be noted, however, that in many of those jurisdictions, recovery in wrongful death actions of nonpecuniary losses such as loss of love, affection, companionship, society and consortium are not allowed. The classification of loss of services as a separate *889 category of pecuniary loss is, therefore, of significant importance in those jurisdictions.
In Louisiana, under LSA-C.C. Art. 2315, the survivors are entitled to recover "the damages which they sustained through the wrongful death of the deceased." Nonpecuniary loss, variously described in many cases as loss of love, affection, companionship, care, attention, nuture, guidance, society, consortium and like terms, is recoverable. Additionally, loss of support by a husband-father or a wife-mother, a pecuniary loss often times but not always categorized separately from nonpecuniary loss, is recoverable. Defendant is quite correct that recovery of loss of services of a wife-mother, as a separate and distinct item of damages, has never been discussed and either granted or rejected in a Louisiana wrongful death case.
We have no doubt that the loss of a wife-mother's services such as cooking, cleaning, housekeeping, and the like is a very real and substantial loss to the survivors and is a significant part of "the damages which they sustained through the wrongful death of the deceased"; hence, such damages are recoverable. We also recognize that the testimony of experts such as economists as to the value or cost of replacement of such services has value to the trier of fact, judge or jury, in the almost imponderable task of assigning a dollar amount to the survivors' loss.
We do not decide, and find it unnecessary to decide in this case, whether loss of services is properly a distinct category of damages; separate, apart and in addition to damages customarily described as loss of love and affection in Louisiana cases. The loss of such services does not necessarily result in direct financial and pecuniary loss to the survivors as does loss of a decedent's earnings and support, and in that respect is different from loss of support. Certainly, as argued by defendant, services performed by a wife, and by a husband for that matter, are manifestations of love and affection. Our view is that loss of such services has always been a consideration in determining damages in wrongful death cases in Louisiana, but has not heretofore been separately categorized as a pecuniary loss and assigned a separate dollar value.
The reason we do not find it necessary to specifically approve or disapprove the award as categorized by the trial court is because we find the total award to the husband of $113,000 for damages, in addition to certain special damages, to be within the range of the trial court's discretion. The facts of this case call for a maximum award to Mr. Marceleno for the wrongful death of his wife.
At the time of her death, Mrs. Marceleno was 25 years old and her husband was 31. They had five small children, ages one, three, four, five and six. Mr. Marceleno worked as a boner in a meat packing plant earning a moderate income. The trial court found: "Mike and Glenda Marceleno had been married almost seven years when she was killed. Glenda Marceleno did not work at an outside job, but was, according to the evidence, a `full-time', devoted wife and mother. The uncontradicted evidence is that Mrs. Marceleno was a loving, tender and thoughtful wife as well as a deeply affectionate, considerate and caring mother. The record reveals that Mr. and Mrs. Marceleno had a most special relationship and her loving relationship with her children was quite evident throughout the testimony. Although not wealthy in a material sense, the Marceleno family was indeed wealthy because of its closeness of relationship. No doubt much of the credit for this special relationship was due to the seemingly untiring efforts of Glenda Marceleno. The loss of Mrs. Marceleno to her husband and children was extremely traumatic and devastating. Mike was deprived of an openly affectionate wife who seemed to cater to his every need. The children were deprived in their formative years of a mother who loved them deeply and cared for them physically and emotionally extremely well."
The record also reflects Glenda kept their modest trailer home immaculate. She did *890 all the cooking, laundry, and other household duties for the family of seven. She was constantly with her children, taking them with her whenever possible. Mike and Glenda seldom went out at night because she did not want to leave their children. Neighbors and friends described Mike and Glenda's relationship with each other as like "newlyweds". As Mike Marceleno said, he lost his entire life when she died. The total damage, whether described as pecuniary or nonpecuniary, sustained by this husband with limited education, moderate income, and with five small children to care for, is probably greater than it would be had he been in better financial circumstances and in a position to have many of the services provided by the wife done by others.
Recent awards to a spouse for loss of love and affection include: Lofton v. Cade, 359 So.2d 1074 (La.App. 3d Cir. 1978), writ refused 360 So.2d 1177 (1978) ($55,000 to a widow); Fowler v. Western U. Tel. Co., 357 So.2d 1305 (La.App. 3d Cir. 1978), writ denied 359 So.2d 196 (1978) ($90,000 to a 70-year-old husband for the death of his 69-year-old wife); Robertson v. Handy, 354 So.2d 626 (La.App. 1st Cir. 1977), writ refused 356 So.2d 434 (1978) ($40,000 to a surviving husband); Blancher v. Samuels, 354 So.2d 213 (La.App. 4th Cir. 1977), writs refused 355 So.2d 257 and 263 (1978) ($25,000, the lowest adequate award, to a widow); Graham v. Rudison, 348 So.2d 711 (La.App. 1st Cir. 1977) ($60,000, which included an unspecified amount for loss of support, to the husband for the death of his 37-year-old wife); Jerry Joseph Fontenot, Ind. v. State, Through Department of Highways, 346 So.2d 849 (La.App. 1st Cir. 1977), writ granted 349 So.2d 1270 (1978), reversed on other grounds 355 So.2d 1324 (1978) ($115,000, including $75,000 loss of material assistance, to a surviving husband, approved but reduced to amount prayed for); Smith v. Taylor, 343 So.2d 313 (La.App. 2d Cir. 1977) ($32,000 to a widow); Foster v. Marshall, 341 So.2d 1354 (La.App. 2d Cir. 1977), writ refused 343 So.2d 1067 and 1077 (1977) ($45,000, including unspecified amount for loss of support, for death of 47-year-old wife); Aymond v. State, Department of Highways, 333 So.2d 383 (La. App. 3d Cir. 1976), writ refused 337 So.2d 875 (1976) ($80,000 to a wife for the death of her 37-year-old husband). In all of the cases arising out of the wrongful death of a husband, there was an additional award for loss of support.
The award in this case is higher than the award, exclusive of loss of support, in any of the previous reported Louisiana cases, but considering the maximal circumstances presented we conclude the $113,000 award is within the range of discretion. We are mindful of the "leapfrog" effect of approving increasingly larger awards on the basis of the latest award not being so much more than the previous highest award as to amount to an abuse of discretion. The particular facts of this case, however, justify the amount. It may also be that previous awards to survivors for the wrongful death of a wife-mother (which may not have adequately taken into account loss of services) have been generally on the low side as compared to awards to survivors for the death of a husband-father (which have usually adequately taken into account loss of support).
The Department also contends that the award of $10,000 to Mr. Marceleno and the children for Mrs. Marceleno's pain and suffering prior to her death is excessive. It is argued that the evidence shows Mrs. Marceleno was rendered unconscious at the moment of impact and never experienced any pain.
Mrs. Marceleno lived for 36 hours following the accident. Witnesses at the scene heard her moaning and making gurgling noises prior to her removal to the hospital. Although she never regained consciousness, hospital records and the doctor's testimony show she had arm and leg movements and that her eyes responded to light while under treatment at the hospital. The doctor testified at one point that he did not believe she felt pain but later testified it was possible that she experienced pain while in a semicomatose condition.
*891 Damages for a decedent's pain and suffering are not precluded when there is "a scintilla of evidence of any suffering or pain on the part of the deceased by his actions or otherwise during his unconscious hours from the time he was injured until his death" and when "there is evidence that the decedent made noises and movements indicating that he was sensitive to and aware of pain." Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976). On remand from the Supreme Court, the Court of Appeal in Temple, 336 So.2d 299 (La.App. 1st Cir. 1976), writ denied 339 So.2d 23 (1976), awarded $10,000 for the decedent's pain and suffering where the decedent made gagging sounds and showed signs of life at the scene of the accident and was pronounced dead on arrival at the hospital. In Walker v. St. Paul Insurance Companies, 343 So.2d 251 (La.App. 1st Cir. 1977), writ denied 345 So.2d 61 (1977), an award of $10,000 was made to the survivors where the severely injured decedent moaned and groaned intermittently and died about one hour after the accident.
This court has difficulty in justifying a $10,000 award on the basis of a possibility of some pain experienced over a period of hours by an unconscious person who dies without regaining consciousness as compared to awards of similar amounts to injured persons who experience conscious pain over an extended period of time. However, in view of the awards in the cited cases where the evidence of pain and suffering of the decedent was probably less than in this case, we cannot say the trial court abused its discretion.
No complaint is made by the Department concerning the $35,000 awards to each child.
The Department contends that the $22,433.55 award to Mrs. Hogan is excessive, primarily because her complaints of continued headaches and neck and back pain were subjective and not supported by medical evidence. Mrs. Hogan testified she experienced pain from the time of the accident through trial and she was treated by medical doctors and a chiropractor during that time. The trial court specifically found Mrs. Hogan's testimony to be credible and that she was disabled from working for about a year and a half. The award of $12,500 for pain and suffering, $6,000 for loss of earnings, and $3,933.85 for medical expenses is supported by the evidence and is within the range of the trial court's discretion.
Costs
The Department's contention that it cannot be assessed for any costs other than stenographer's fees under LSA-R.S. 13:4521 is without merit. Segura v. Louisiana Architects Selection Board, 362 So.2d 498 (La.1978) held that the statute has been superceded by Art. 12, § 10(A) of the 1974 Louisiana Constitution which provides that the state shall not be immune from suit or liability for injury to person or property. See also Act 467 of 1978, amending LSA-R.S. 13:4521 and adding LSA-R.S. 13:5112.
Decree
For the reasons assigned, the judgment of the district court is affirmed at the cost of the State of Louisiana, Department of Highways.
Affirmed.