REID, Judge.
This is a suit for damages to a Volkswagen automobile filed by Carl Catania against Richard E. McEwen and his insurer, The Fidelity and Casualty Company of New York as a result of an accident which happened on Florida Boulevard in East Baton Rouge Parish on August 14, 1964.
The Volkswagen automobile driven by Carl Catania had a collision with an automobile driven and owned by Richard E. McEwen. Damages to the Volkswagen amounted to $225.29 which was stipulated.
The Lower Court rendered judgment in favor of plaintiff against the defendant for the amount of $225.29. Defendants have *566 brought this appeal from this judgment and .plaintiff appellee has filed an answer to the appeal asking for an increase in the amount of the award to $525.29.
Subsequent to the filing of the appeal in this Court defendants appellants have filed an exception of no right of action, based on the proposition that the evidence showed that Carl Catania was not the owner of the 1961 Volkswagen involved in this accident, but that the car was owned by one Carl E. Courtney. We will take this exception up and dispose of it first.
It is true that the title to the car in question was in the name of Carl E. Courtney, but the undisputed testimony of the plaintiff is that the title was placed in Courtney’s name, Courtney being his stepfather, and that he being under twenty-one years of age could not finance it, but that he was the actual owner of the car and that he paid off the note covering the balance due on the purchase of the car. The car was disposed of by the step-father signing the title transfer.
The defendants-appellants rely on the case of Christo v. Eagle Star Insurance Company, 232 La. 28, 93 So.2d 682.
In this Christo case, supra, the plaintiff took title to a car in his name but the car was actually the property of Johnny Lee Jackson, a minor twenty years of age. The purchaser took out a policy of collision insurance with the Eagle Star Insurance Company, Ltd. The car was demolished in a wreck and Christo filed a claim for damages with his collision insurer, the defendant. The Court denied recovery on the grounds that the insurance company did not know that the real owner of the car and the man who was going to drive it was a minor under twenty-five years of age, and had they known it they would never have issued the policy of insurance and accepted a premium of only $143.00. We do not see that this case has any bearing on the instant case.
The uncontroverted testimony is to' the effect that the car was owned by Cat-ania though title was taken in the name of' Courtney, his step-father. This was for-the purpose of convenience because Catania-at that time was a minor and could not: take title in his name and buy the car on-credit. This testimony went into the record uncontroverted, unobjected to, and in-our opinion enlarged the pleadings to show that Catania was the real owner of interest • although title to the car was in the name of' Courtney.
For these reasons the exception of no» right of action is overruled.
This brings us to the facts in the case.. The accident happened about 1:15 P.M. on-a rainy day. Florida Boulevard is a four lane boulevard separated by a wide neutral' ground. McEwen was driving in the outside traffic lane headed east and Catania, was driving on the inside traffic lane headed in the same direction. McEwen attempted to change lanes so as to get into the-inside lane where he could make a left tunn at a cross-over. He turned on his left-blinker light and angled over into the inside-lane at a point about half way to the crossover. When his car was turning into the-cross-over plaintiff’s car struck it in attempting to avoid the accident
Catania was traveling at a speed of 40 to 45 miles an hour, visibility was poor-lie was about 90 to 100 feet from the Me-Ewen car when he noticed that he was. turning into the inside lane. He applied' his brakes and the Volkswagen went into a skid and the left front struck the right tail', light of the McEwen vehicle.
The sole contention of the defendant in this case is that Catania was guilty of contributory negligence in failing to have the Volkswagen under proper control and driving it too fast under the conditions, existing on the highway.
Defendant cites several cases to the effect that the weather conditions, the poor *567 «visibility, and the distance plaintiff was from the McEwen vehicle when he first ■noticed it turning would be traveling too fast under the circumstances and he would be guilty of contributory negligence.
The first case Ryder v. Wright, La.App., 106 So.2d 543 holds that where an approaching automobile struck defendant’s left turning automobile, with the plaintiff driving within the limits of the municipality in which the speed limit was 25 miles per hour and after the application of his brakes •skidded a distance of 99 feet to the point of impact, established the excessive speed at which the plaintiff was driving was a concurring act of negligence.
In the instant case the plaintiff was driving 40 to 45 miles an hour in a 50 mile zone •on a four lane highway. We do not think the facts in the instant case would bring it within the ruling of Ryder v. Wright, ■supra.
In the next case Carriere v. Aetna Casualty Company, 146 So.2d 451, does hold that a motorist should have seen an object which by ordinary care and prudence he should have seen in time to avoid an accident and that the driver of an automobile is negligent if he is driving at a rate of speed which is ■greater than that in which he could stop within the range of his vision. Again, we ■do not think that the facts of the instant ■case bring it within the ruling of the Car-riere case.
The case Standard Casualty Company v. Fidelity & Casualty Company of New York, La.App., 162 So.2d 26, supra, holds that where the visibility was somewhat impaired by the light of early dawn and misting rain there was a greater duty imposed upon the motorist and that the motorist had no right to assume that the road ahead was open and proceed without regard for the safety of others. Again, we do not think these cases bring the instant case under their ruling.
It is a well settled principle of law in this State that he who makes a left turn must taire the greatest precautions and must not attempt to do so unless he is reasonably satisfied that he can make it with safety.
The law on changing from one traffic lane to the other is covered by LSA-R.S. 32:79 as follows:
“Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
(2) The department may erect signs directing slow moving traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction, and drivers of vehicles shall obey the directions of such signs. Acts 1962, No. 310, § 1.”
This provision of our law has been upheld by our brothers of the Fourth Circuit in the case of Canzoneri v. Connecticut Fire Insurance Company of Hartford, La. App., 163 So.2d 834. This case holds as follows:
“(3) On a multiple lane, street or highway, a greater burden of responsibility for the exercise of extreme caution is required of a motorist changing from one lane to another than of a motorist proceeding within lawful speed limits in a straight line in a marked lane. This does not, of course, relieve the motorist traveling straight of the duty of care; of keeping a proper lookout; of having his vehicle under control and the duty to avoid all foreseeable danger, but the greater responsibility is imposed upon the one who deviates from his course and moves across parallel traffic lanes.
*568 In the instant case the plaintiff violated'this duty and is responsible for the accident caused by his negligence.”
' The case Thibodeaux v. Gore, La.App., 124 So.2d 336 holds as follows, to-wit:
“(3) In our opinion, the action of Gore in suddenly swerving into Thi-bodeaux’ lane of traffic created an emergency, and unless it is established that Thibodeaux contributed to the emergency or acted unreasonably under the circumstances, he should not be held responsible for an error of judgment committed in that emergency. The burden of proving that Thibodeaux was guilty of contributory negligence, of course, rests upon the defendants. Hunter v. Mayfield, La.App.1958, 106 So.2d 330; Service Fire Insurance Co. of New York v. Indiana Lumbermans Mutual Insurance Co. et al., La.App. 1959, 111 So.2d 358.”
The defendants practically concede the negligence of McEwen in attempting to cross from the right lane to the left lane without taking the legal precautions. They contend for the reasons hereinabove cited that the plaintiff was guilty of contributory negligence in not having his car under the proper control and driving too fast under the prevailing weather conditions.
We do not feel that plaintiff was guilty of any contributory negligence but that the sole and proximate cause of the accident was the negligence of McEwen in transferring from the right hand lane to the left hand lane to make a left turn, without taking the proper precautions.
The next question is on the issue of quantum. The Lower Court allowed the stipulated damages of $225.29. The appellee in his brief contends that he should have an additional award of $99.71 to cover the loss due to depreciation, and cites the case of Hamilton v. Dalrymple, La.App., 135 So.2d 536.
In Hamilton v. Dalrymple, supra, there was expert testimony showing the salvage value of the car as well as the value of the car before the accident. The Court allowed damages for depreciation as a result of the accident. However, in the instant case the only testimony concerning the depreciated damages is that of the plaintiff himself and' his testimony was objected to, the Court admitting it subject to the objection holding that it went to the effect and not to the admissibility. The Court evidently did not consider the testimony of any great weight, because he did not allow this item of damages, and in this we believe the Judge of the Lower Court is correct.
We, therefore, hold that the judgment of the Lower Court is correct and is hereby-affirmed.
Affirmed.