CUTRER, Judge.
The facts which gave rise to this action were succinctly set forth by the trial judge as follows:
“This is tort action which arises out of an automobile accident which occurred at about noon on Thanksgiving Day, Thursday, November 26, 1964 on Louisiana Highway No. 70 just south of the community of Pierre Part in Assumption Parish. Involved in the accident was a 1962 Chevrolet automobile owned and driven by Chester P. Gaspard, one of the defendants, and insured by The Travelers Indemnity Company, the other defendant, and a 1962 Chevrolet Corvair automobile driven by Morgan J. Sedotal, the 19-year old son of the plaintiffs, Rudolph Sedotal and his wife, Mrs. Eugenie Grandin Sedotal, who died from injuries received in the accident.
It is alleged in the petition that just prior to the accident young Sedotal was proceeding north on Highway 70 and that the accident occurred as he attempted to make a left turn to go west into a driveway on the west side of the road when he was struck by Gaspard who was traveling south. Negligence is charged against the latter in failing to keep a proper lookout, failing to keep his vehicle under proper control and driving at an excessive rate while under the influence of *850 intoxicating beverages. The answer of the defendants denies any negligence on •the part of Gaspard and alternatively charges contributory negligence on the part of Sedotal in making a left turn on a heavily travelled highway without keeping a proper lookout.
The record reflects that Louisiana Highway No. 70 at the scene of the accident runs in a north-south direction between Pierre Part to the north and Belle River to the south. It is a two-lane blacktopped road, testified to by Trooper Landry as being some 24 feet in width with shoulders surfaced with shells some five feet in width. The highway is straight for a considerable distance in either direction from the point of collision. The accident occurred, as alleged, at about noon on Thanksgiving Day of 1964 at which time dry and clear weather conditions prevailed. Just prior to the collision Gas-pard was travelling south, having been to Napoleonville and being in the process of returning to his home at Belle River. The accident occurred in the southbound lane as young Sedotal, who had been proceeding north in the direction of Pierre Part, attempted to make a left turn in order to enter a driveway on the west side of the highway. His Corvair automobile was struck on its right side and came to rest, according to Trooper Landry, at a point 56 feet six inches from the point of impact. The speed limit in the area Trooper Landry stated to be 60 miles per hour.
Defendant Gaspard testified that just previous to the accident he was travelling at about 50 to 55 miles per hour. He stated that he first saw Sedotal when he was ‘about a mile down the road’ and that the accident occurred when Sedotal, without giving any signal and when at about 25 to 50 feet away from him turned left into his path.
Mr. George LeBlanc, Jr. testified that shortly before the accident he had seen young Sedotal at his (LeBlanc’s) mother’s home which is situated some 1000 feet to the south of the site of the accident. He testified that he watched Sedotal from his mother’s kitchen window as he proceeded up the road, that he proceeded to a point where he stopped, then backed up, made a quick left turn, and then stopped again in the southbound lane where he remained about a minute before being struck by Gaspard. He stated that he went to the scene of the accident, saw the trooper interviewing witnesses, but declined to come forward to volunteer the information in his possession because it was his opinion that investigating officers had a way of twisting things around so as to arrive at a result preconceived by them.
A Mr. Henry Landry also testified on behalf of the plaintiffs. He testified that he was waxing his car at the side of his brother’s trailer some 30 to 40 feet from where the accident occurred. He saw Sedotal as he passed going north towards Pierre Part, saw him stop, back up and then proceed to turn left to enter the driveway on the west. He saw the crash and estimated Gaspard’s speed at between 80 and 85 miles per hour. On cross-examination this witness said that he did not see Sedotal stop hut saw him as he passed and then saw him next when he was in the process of backing. When asked if Sedotal had ever stopped after he commenced turning he answered, ‘No.’ He also stated on cross-examination that he first saw Gaspard’s car when it was about 20 feet from the point of collision.
A Mr. Gerard W. Langlois testified on behalf of the defendants. This witness stated that just prior to the accident he was proceeding north to the rear of and on the same side of the road as the Corvair. He saw the Corvair as it slowed to make its turn at which time he remarked to his younger brother that T didn’t think it was going to make the turn — it just didn’t look like he could *851 make it.’ He described the Chevrolet as being close when the Corvair began to turn and stated that the Corvair never stopped after commencing the turn until it was struck. He stated that he was unable to estimate the speed of the Gaspard car.”
The record does not support the allegation that Gaspard was travelling at an excessive rate of speed or that he failed to keep a proper lookout. The trial judge discounted the testimony of Mr. LeBlanc because he observed the accident from a distant vantage point. Nor was the court impressed with Mr. Landry’s estimate of speed due to the fact that the latter first observed Gaspard’s vehicle as it traveled the last twenty feet before the impact. To give a reliable estimate of the speed of the vehicle under these circumstances is a practical impossibility. The trial judge’s appraisal of the witnesses and his conclusion that Gaspard was not speeding is buttressed by the fact that the lighter Corvair driven by Sedotal was moved a distance of 56 feet when struck by the heavier Chevrolet driven by Gaspard.
We further direct ourselves to appellant’s contention that Gaspard was intoxicated at the time of the accident. Between 8:30 A.M. and noon, Gaspard consumed two seven-ounce bottles and three ten-ounce cans of beer. Shirley Scioneaux observed Gaspard at the Buck Inn and stated he seemed sober, and Mr. Roland Comeaux, who trimmed his hair prior to the accident said that he failed to perceive any indication of intoxication. Mr. Maxine Cavalier drank a beer with defendant at the Rainbow Inn and testified that Gaspard was sober. In response to a question propounded by counsel for plaintiff, Trooper Landry testified that Dr. Peltier, who treated Gaspard after the accident, stated that he found “no indication of drinking.”
The above witnesses support the trial judge’s conclusion:
“Considering the distance travelled and the time period involved, the court does not believe that the beer consumed could have had any appreciable effect on Mr. Gaspard’s driving.”
Counsel for appellant asserts that the consumption of beer was a factor contributing strongly to the occurrence of the accident. The record does not justify such a conclusion. The Sedotal vehicle’s sudden and unexpected left turn in the path of Gaspard’s vehicle produced a dangerous situation which was virtually impossible to avoid. The evidence clearly reveals that the overwhelming negligence of Sedotal was the proximate cause of the accident. The law pertaining to the care required when executing a left turn is set forth in La.R.S. 32:104(A) which states:
“A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.”
In the recent case of Catania v. Fidelity & Casualty Company of New York, La.App., 182 So.2d 565 this court stated:
“It is a well settled principle of law in this State that he who makes a left turn must take the greatest precautions and must not attempt to do so unless he is reasonably satisfied that he can make it with safety.” See also Motors Insurance Corporation v. Munson, La.App., 184 So.2d 558; McMorris v. Hanover Insurance Co., La.App., 175 So.2d 697; Howard v. Fidelity & Casualty Company of New York, La.App., 179 So.2d 522; and Freeman v. Liberty Mutual Insurance Company, La.App., 175 So.2d 659.
For the above and foregoing reasons, the judgment of the trial court is hereby affirmed.
Affirmed.