252 So.2d 123 (1971)
Homer BAILES and his wife, Mary Margaret Bailes, Plaintiffs and Appellants,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY et al., Defendants and Appellees.
No. 3465.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1971.
Rehearing Denied September 23, 1971.
Writ Granted November 4, 1971.
Lunn, Irion, Switzer, Johnson & Sally, by James B. Gardner, Shreveport, for defendant-appellant.
John S. Stephens, Henry W. Bethard, III, Coushatta, for plaintiffs-appellees.
Jack O. Brittain, Natchitoches, Gahagan & Kelly, by Donald G. Kelly, Natchitoches, for defendants-appellees.
Before SAVOY, CULPEPPER and MILLER, JJ.
*124 CULPEPPER, Judge.
This is a companion case to Pete Procell v. Southern Farm Bureau Casualty Insurance Company et al., 252 So.2d 127 and John Richard Gray et al. v. Southern Farm Bureau Casualty Insurance Company et al., 252 So.2d 128, in which separate decisions are being rendered by us this date. These three consolidated cases arose out of a head-on collision between two vehicles. One was owned by the defendant, Roscoe Methvin, being driven at the time by his minor son, James Donald Methvin, and insured by the defendant, Southern Farm Mutual Automobile Insurance Company. The other vehicle was owned by W. R. Gray, being driven by Richard R. Hinds, Jr., minor son of the defendant, Richard R. Hinds, Sr., and was uninsured. Passengers in the Hinds automobile, in addition to the owner's son, John Richard Gray, were Mary Bailes, Jerri Mercer, Barnell Procell and Beth Windham, all of whom received injuries. Mary Bailes, Jerri Mercer and Barnell Procell died from their injuries.
In the present suit, Mr. and Mrs. Homer Bailes seek damages for the wrongful death of their daughter, Mary Bailes. Named as defendants are Richard Hinds, Sr., father of the minor, Richard Hinds, Jr., Roscoe Methvin, father of the minor, James Donald Methvin, and Methvin's liability insurer, Southern Farm Bureau Casualty Insurance Company. Mr. and Mrs. Bailes also seek recovery against State Farm Mutual Automobile Insurance Company under the uninsured motorist provisions of two policies which they carried on their two vehicles.
The district judge found the accident was caused solely by the negligence of Hinds, the uninsured motorist. Judgment was rendered in favor of Mr. and Mrs. Bailes and against the defendant, Richard R. Hinds, Sr., in the sum of $25,000, in general damages, and $1827.75 funeral expense, and against State Farm in the sum of $5,000.00 general damages, plus $1827.75 funeral expense. Mr. Hinds has not appealed, and the judgment is therefore final as to him. State Farm appealed. Plaintiff answered the appeal, contending that the awards should be increased to allow the maximum of $5,000, plus the total funeral expenses under the uninsured motorist provisions of both policies, a total of $10,000, plus $3.655.50 funeral expense.
The first issues relate to the alleged negligence of the two drivers. The scene of the accident is on Louisiana State Highway #486, a two-lane blacktop road which runs generally north and south, in Natchitoches Parish. It was about 1:30 a. m. on December 22, 1968. The weather was foggy, and the road wet.
Methvin was driving in a southerly direction, approaching a gradual curve toward the west. Hinds approached the curve in a northerly direction. The two vehicles collided, right front to right front, on the west shoulder of the road at a point a few feet before Methvin reached the curve going south.
The two drivers gave conflicting versions of the accident. Methvin testified he was driving south in his proper lane at a speed of about 45 miles per hour and that, due to the foggy conditions, he could see less than 100 yards. He saw the lights from the Hinds vehicle coming around the curve and then realized that it was on the wrong side of the road. Methvin testified that, in an effort to avoid a collision, he drove onto the west shoulder, but Hinds also went onto the shoulder. Methvin says that at the time of the impact, his right wheels were on the shoulder and his left wheels on the pavement.
Methvin's testimony is corroborated by State Trooper I. T. Chambers, who investigated the accident. Trooper Chambers testified that tire marks left by the Methvin vehicle show it left the pavement and drove onto the west shoulder 75 to 80 feet before Methvin reached the point of impact. The trooper placed the point of impact *125 2½ feet west of the edge of the pavement. He said the vehicles collided right front to right front, and this is shown clearly by photographs. The trooper found no physical evidence to show that Methvin was on the wrong side of the highway as he approached the curve.
Richard Hinds testified that he was driving north in his proper lane as he entered the curve and saw the headlights of the Methvin vehicle four or five car-lengths away. When the Methvin automobile was at a distance of three or four car-lengths, Hinds says he realized that it was in the north bound lane. Hinds contends he cut hard to the left across the south bound lane onto the west shoulder in an unsuccessful effort to avoid a collision.
Hinds' version of the accident is corroborated to a degree by Miss Windham, a passenger on the front seat. She testified that as they entered the curve she looked up and saw the headlights of the Methvin vehicle only two or three carlengths ahead. She says that Hinds was in the proper lane and that Methvin was in the wrong lane. She then felt the Hinds car swerve to the left and immediately thereafter the impact occurred.
The district judge accepted Methvin's version of the accident. The evidence amply supports this conclusion. Methvin's version is strongly corroborated by the physical facts found by the state trooper. Furthermore, since Hinds was on the wrong side of the road when the collision occurred, he is presumed to be negligent and has the burden of showing otherwise, Belgard v. Aetna Casualty & Surety Company, La. App., 227 So.2d 24 (3rd Cir. 1969) and the cases cited therein.
Having reached this conclusion, it is unnecessary for us to decide whether Methvin was intoxicated at the time of the accident, Methvin admitted having three drinks of whisky and coke during the evening hours preceding the accident. A blood-alcohol test made at 3:35 a. m., following the collision, showed .08%. Dr. Charles E. Cook testified that .125% is generally considered "under the influence of alcohol", that with normal metabolism Methvin probably had about .110% at the time of the accident and, depending on the variables for different individuals, this may or may not be sufficient for intoxication. However, Dr. Cook did say that Methvin did not appear to be under the influence when he saw him in the hospital and that he did not smell alcohol on his breath. In any event, under the facts which we have found, Methvin's intoxication, if any, was not a cause in fact of the accident since he did not enter the wrong side of the highway immediately preceding the collision.
The next issue is whether, under the uninsured motorist provisions of its policy, State Farm should have been given credit for the funeral expenses in the sum of $1827.75 against the maximum coverage of $5,000. State Farm contends the trial judge failed to apply Part IVProtection Against Uninsured MotoristsLimits of Liability, Subparagraph (d) at page 14 which reads as follows:
"The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II."
Part II provides coverage for "Expenses For Medical Services" under the liability provisions of the policy and includes funeral expense.
In Connelley v. Southern Farm Bureau Casualty Insurance Company, 219 So.2d 206 (1st Cir. 1969) the court considered a policy provision identical to that involved in the present case and held that credit against the $5,000 maximum uninsured motorist coverage must be given for any payments made under Part II providing for medical expense. In Morgan v. State Farm Mutual Insurance Company, La.App., 195 So. *126 2d 648 (3rd Cir. 1967), writs refused, 250 La. 638, 197 So.2d 897, we considered very similar policy provisions and also held that credit must be given. Taylor v. State Farm Mutual Automobile Insurance Company, La.App., 237 So.2d 690 (4th Cir. 1970) reaches a result contrary to that which this court and the First Circuit have adopted. However, we think the language of the policy is clear and requires that the credit sought be given.
Plaintiffs have answered the appeal, contending that since they have uninsured motorist coverage under two separate policies on two different vehicles they should be able to "stack" the $5,000 limits and recover a total of $10,000, and also the funeral expenses for a total of $3,655.50. For the reasons stated above, we have already concluded that the award for funeral expenses must be credited against the maximum uninsured motorist coverage. The remaining issue is whether plaintiff should be able to recover the maximum limit on both policies, a total of $10,000.
The "Other Insurance" clause under the uninsured motorist coverage of both policies reads as follows:
"With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limit of liability of this insurance and such other insurance."
All parties concede that since in the present case both policies provide only for excess insurance, the first paragraph quoted above has no application. We are concerned here with the second paragraph, which deals with limiting and prorating coverage "if the insured has other similar insurance available to him and applicable." We think the provisions of the policy are clear. The clause in question states that "the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance." (Emphasis supplied) In this case the limit of liability in both policies is $5,000 and hence the higher is $5,000. Damages are "deemed not to exceed" this amount. The policy provides further that "the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." In the present case, the limit under each policy is $5,000 and the total is $10,000, hence the proportion is one-half of the total damages recoverable under all insurance available, which total in this case is $5,000. This means that under each policy the company is liable for one-half of the total of $5,000. One-half of $5,000 is $2,500.
We find no Louisiana case construing the quoted other insurance clauses in the precise situation presented here, where the same company issued both policies. However, several cases support the view that the coverages should not be "stacked." In Box v. Doe, La.App., 221 So.2d 666 (4th Cir. 1969) there were two uninsured motorist policies applicable, neither of which was found to provide excess coverage. In this situation, the court held both policies provided concurrent coverage and used the pro rata clause (the second paragraph quoted above) to limit the liability of each insured *127 to 50% of the total damages of $3,931.40, which in that case resulted in a judgment against each insurer for $1,965.70. Although plaintiff did not contend that the maximum coverages should be "stacked", since her damage was only $3,931.40, the Box decision does construe the pro rata clause in a manner consistent with the result which we have reached.
In LeBlanc v. Allstate Insurance Company, La.App., 194 So.2d 791 (3rd Cir. 1967) we discussed at length the construction of the first paragraph quoted above, relative to the situation where there is primary and excess insurance, and held that plaintiff could recover only a total of $5,000, and the coverages could not be "stacked." See also Courville v. State Farm Mutual Automobile Insurance Company, 194 So.2d 797 (3rd Cir. 1967), writ refused, 250 La. 535, 197 So.2d 79, which involved the same issues; Rolling v. Miller, La.App., 233 So.2d 723 (4th Cir. 1970); Jackson v. State Farm Mutual Automobile Insurance Company, La.App., 235 So.2d 621 (2d Cir. 1970), writs refused; and Lott v. Southern Farm Bureau Casualty Insurance Company, La.App., 223 So.2d 492 (1st Cir. 1969) which support the holding that under these policy provisions uninsured motorist protection cannot be "stacked."
For the reasons assigned, the judgment appealed is amended to give to the defendant, State Farm Mutual Automobile Insurance Company, a credit in the sum of $1,827.75, representing the funeral expenses of Mary R. Bailes, against the $5,000 limit of liability under the uninsured motorist provisions of its policies. Hence, the award to Homer Bailes, exclusive of such funeral expense, is reduced from $2,500 to $1,586.14 and the award to Mary Margaret Bailes is reduced from $2,500 to $1,586.14. Otherwise than as herein amended, the judgment is affirmed. Costs of this appeal are prorated one-half to defendant appellant and one-half to plaintiffs.
Affirmed, as amended.