389 So.2d 855 (1980)
Ronald J. HEBERT
v.
LEFTY'S MOVING SERVICE, Sentry Insurance Company, Travelers Insurance Company and XYZ Insurance Company.
No. 10800.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1980.
*856 Usry, Leefe & Weeks, Richard K. Leefe and Timothy T. Roniger, New Orleans, for plaintiff-appellee.
Michael E. Wanek, Dodge, Friend, Wilson & Spedale, Denis Paul Juge, New Orleans, for defendants-appellants.
Before CHEHARDY, BARRY and SARTAIN, JJ.
BARRY, Judge.
Dr. Ronald J. Hebert was a guest passenger in the front seat of an automobile owned and driven by Harold DeBlanc. The DeBlanc vehicle was proceeding toward downtown New Orleans in the right lane of the three lane Pontchartrain Expressway. A truck owned by Lefty's Moving Service (Lefty's) was ahead in the left lane going in the same direction when it moved across the middle and into the right lane in order to exit. The DeBlanc vehicle struck the rear of the truck injuring Dr. Hebert.
Dr. Hebert filed suit against Lefty's, its driver and insurer, Harold DeBlanc, his employer and its insurer. A jury found the driver of each vehicle guilty of contributory negligence and the proximate cause of the accident and awarded plaintiff $70,000.00 in damages. DeBlanc, his employer and insurer filed this suspensive appeal urging error as to DeBlanc's negligence and the trial court's jury charges. Dr. Hebert answered the appeal and seeks an increase in quantum to $260,000.00. Lefty's did not appeal or answer the appeal, but by brief denied its driver was negligent, urged affirmation of DeBlanc's negligence and that the jury award was excessive.
Since Lefty's failed to file an appeal or answer the appeal, under LSA-C.C.P. Art. *857 2133 its position in the judgment cannot change in its favor. "An appellate court cannot modify, revise, or reverse a judgment, or part of a judgment, in favor of a party who has neither appealed nor complained by way of an answer to an appeal." Post v. Rodrigue, 205 So.2d 67 (La.App., 4th Cir. 1967).
We therefore review appellant DeBlanc's position as to his negligence, if any, and the propriety of the jury charges. The amount of the award is not questioned by DeBlanc.
DeBlanc testified that when he reached the bottom of the Metairie overpass he noticed Lefty's truck was driving "erratically". He saw the truck move quickly from the left lane, cross the middle lane, then pull into the right lane and attempt to leave the expressway by driving between two barrels which separated the expressway from the exit lane. The crucial part of DeBlanc's account was his admission that when he first saw the truck it was five hundred feet ahead and beginning its sudden movement to the right and causing other vehicles to slam on their brakes to avoid an accident. In spite of this observation DeBlanc testified he traveled between three hundred and three hundred fifty feet before slamming on his brakes which resulted in one hundred forty-five feet of skid marks before hitting the truck.
Lefty's driver testified that he saw the DeBlanc vehicle in his rearview mirror approximately five hundred feet to the rear when he began changing lanes. The driver said he had completed his move into the right lane, slowed down, and was in the process of leaving the expressway between the barrels when he was hit by DeBlanc.
DeBlanc said he was driving between 45-50 miles per hour which is within the speed limit and his account was corroborated by an eye witness in another automobile. The weather was clear and vision unobstructed.
The driver of a vehicle has a duty to maintain a proper lookout and keep control of his vehicle at all times. Cory v. Employers Mutual Liability Ins. Co. of Wis., 267 So.2d 761 (La.App., 2nd Cir. 1972). As a general rule, when a following vehicle collides with the rear of a preceding vehicle, the following vehicle is presumed to be at fault and bears the burden of exculpating himself from the inference of negligence. Tidwell v. Ocean Systems, Inc., 356 So.2d 466 (La.App., 4th Cir. 1977) at p. 468.
DeBlanc attempts to exculpate himself by invoking the doctrine of sudden emergency. He asserts that despite the truck's erratic movement it wasn't until the truck was in his lane that he was faced with the pending crash and his reaction time was less than ten seconds. However, he failed to keep his vehicle under control by slowing down when he witnessed the potential danger from the truck's "erratic" movement. A driver has a duty to drive defensively from the time he witnesses the negligent operation of another vehicle and the potential for resultant damage.
Use of the sudden emergency doctrine is not available to a person who participated in creation of the emergency or who has failed to properly act in order to avoid the emergency. The doctrine is available to a driver proceeding carefully and prudently on the occasion of the sudden emergency who does not contribute to its creation. Smith v. Marquette Casualty Company, 176 So.2d 133 (La., 1965) at p. 137. We therefore agree with the jury's finding that both vehicles were contributorily negligent and the proximate cause of the collision.
Dr. Hebert sustained a severe compound fracture of his lower right leg. Surgery was performed and included placement of surgical pins to set the bones. He spent eight days in the hospital after which his leg was placed in a cast. He remained bedridden for most of the next two weeks and was compelled to use a wheelchair for one month after he was able to leave home. His convalescence terminated approximately seven months later during which he was able to ambulate by use of a wheelchair and crutches.
Two months after the accident the surgical pins were removed. After his second cast he used crutches for an additional six *858 weeks. Dr. Hebert testified that the accident left his right leg shorter than the left leg.
We have no doubt this type of injury caused substantial pain and considerable inconvenience subsequent to the accident. Despite plaintiff's testimony about the loss of length in his right leg, there is no allegation nor a prayer for damages as a result of the alleged permanent disability. A weighted evaluation of Dr. Hebert's injury, treatment, and prognosis is impossible since no physicians were called to testify nor were any medical records introduced into evidence. The only testimony pertaining to the plaintiff's injury came from the plaintiff himself.
In addition to compensation for pain and suffering, the main thrust of plaintiff's case was lost income during his convalescence. Dr. Hebert was a thirty-four year old sole practitioner orthodontist at the time of the accident. He returned to his office approximately three weeks after the accident on a limited basis and provided nominal patient treatment. An associate conducted his practice in his absence until seven months after the accident. Shortly before the accident Dr. Hebert opened a dental clinic in downtown New Orleans. He testified his responsibility with the clinic was primarily promotion among general practitioners in an effort to secure referrals for the specialists in the clinic. Because of the type and duration of plaintiff's injury he was unable to support and foster the development of the clinic during the first few months of its existence.
Plaintiff and defendant each presented an expert to establish lost income from the private office and the new clinic. Plaintiff's economic expert calculated a loss from his private practice at $38,734.00; defendant's expert estimated the loss to be $10,900.00.
Computation of lost income from the clinic is more difficult, if not impossible, since there was no prior business activity for comparison purposes. Plaintiff's expert used figures based upon the average dentist in the United States. His estimate amounted to a loss of $182,506.00 using assumptions and statistics which could be considered academic. At the other extreme was defendant's expert who felt Dr. Hebert suffered no lost income from the clinic because of large initial startup and operational expenses which coincided with plaintiff's incapacity to work. Plaintiff urged his orthodontic speciality as a unique financial situation because each patient produces income for approximately twenty-four months and the financial loss during his incapacity should be projected over that longer period of time.
Attempting to arrive at a reasonable determination of lost income from the private practice and the clinic had to cause confusion and consternation among members of the jury. From the amount of the verdict it is reasonable to conclude that the jury did not accept Dr. Hebert's theory of $182,506.00 lost income from the clinic. We cannot disagree since the estimates in the record are at best very speculative.
The record does support lost income from private practice and the jury was offered a range from $10,900.00 to $38,734.00. Dr. Hebert testified that he didn't lose any of his former patients and the evidence indicates that his patient income was rather nominal prior to the accident.
We feel the jury allocated a large portion of the $70,000.00 judgment to Dr. Hebert's painful injury and the subsequent discomfort and inconvenience with some amount attributable to his lost income from private practice. Considering the potential elements of the award, the evidence relating to each element, and the final judgment, we fail to find the jury abused its much discretion. Coco v. Winston Inds., 341 So.2d 332 (La., 1976); Reck v. Stevens, 373 So.2d 498 (La., 1979).
Finally, appellant's contention that the jury's instructions were confusing and the jury's answers to the interrogatories were inconsistent is without merit. The jury did require clarification on the questions of negligence and proximate cause, but we feel they understood the court's instructions and rendered a proper verdict.
*859 Accordingly, the judgment of the District Court is affirmed. All costs of this appeal are to be borne by appellants.
AFFIRMED.