508 So.2d 180 (1987)
Mr. and Mrs. James P. WHITTINGTON, Sr.
v.
AMERICAN OIL COMPANY, et al.
Mike ROACH and Lois Roach
v.
AMERICAN OIL COMPANY, et al.
Nos. CA 6664, CA 6665.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 1987.
*182 Richard T. Regan, Thomas G. Milazzo, Francipane, Regan and St. Pe, Metairie, for plaintiffs-appellees, Mr. and Mrs. James P. Whittington, Sr.
Eldon E. Fallon, Judith A. Gainsburgh, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, for plaintiffs-appellees, Mr. Mike Roach and Mrs. Lois Roach.
Harvey L. Strahan, Sessions, Fishman, Rosenson, Boisfontaine, Nathan and Winn, New Orleans, for plaintiff-in-intervention and appellee, State Farm Mut. Auto. Ins. Co., and Mr. and Mrs. James P. Whittington, Sr., appellees.
Thomas C. Cowan, Christovich & Kearney, New Orleans, for defendants-appellants, American Oil Co. (Amoco) and Addison Lafiton.
Before KLEES and ARMSTRONG, JJ., and HUFFT, J. Pro Tem.
PRESTON H. HUFFT, Judge Pro Tem.
American Oil Company ("Amoco") and Addison Lafiton, defendants, appeal from the jury's decision which found Addison Lafiton 100% negligent for the wrongful deaths of two teenage girls for which Amoco is vicariously liable as Lafiton's employer and from the amounts of damages awarded to the girls' respective parents. For the reasons given below, we affirm the *183 jury's determination of 100% fault and the amounts awarded as damages.
At approximately 2:54 a.m. on November 27, 1982, an eighteen wheel tractor-trailer truck, owned by Amoco and driven by Addison Lafiton, broadsided a Datsun 310, owned and driven by Theresa Whittington and in which Susan Roach rode as a guest passenger. The accident occurred at the intersection of Chef Menteur Highway and Crowder Boulevard in the eastern section of the City of New Orleans. Lafiton was driving westward on Chef Menteur Highway and Whittington was driving southward on Crowder Boulevard. Theresa Whittington, age 18, died instantly upon collision. Susan Roach, age 14, died five days later.
The night was dark. Rain had fallen during the night, the streets were wet, and mist still fell. Addison Lafiton still had two stops before he finished his assigned gasoline deliveries. The truck's trailer tank contained 8,600 gallons of gasoline. The truck weighed a total of 77,000 pounds. Addison Lafiton had accelerated to 52-53 m.p.h. from the last traffic stop despite the speed limit of 40 m.p.h. beginning and posted four blocks before the intersection of Chef Menteur and Read Road. The speed limit in the previous zone was 45 m.p.h. Addison Lafiton admitted that he did not pay attention to speed.
The police arrived shortly after the accident and cordoned off the area. Addison Lafiton is the only known, living eyewitness to the accident. Officer William McNab, an investigating officer, arrived at approximately 3:35 a.m. Sergeant Raymond Burkhardt, Officer McNab's superior, arrived a little later. Each policeman separately and independently measured the skid marks left by the Amoco truck. They measured from the rear of the truck in an easterly direction along Chef Menteur Highway to the point of impact. Each officer measured 90 feet 6 inches of skid marks. Each police officer also measured the length of skid marks on Chef Menteur Highway left by the Amoco truck prior to impact. Both traced the same measure of 236 feet.
The police used a police car in a skid test to determine the co-efficient of friction. The police also weighed the Amoco truck and determined the weight borne by each of the five axles. Using the data obtained, the investigating officers mathematically determined that the Amoco truck's speed prior to braking had to be within a range of 51 to 53 m.p.h.
The investigating officers discovered that the truck contained a tachograph, an instrument which records certain data pertaining to a vehicle's operation. The police determined that the tachograph showed that the truck's speed had been 52 m.p.h. prior to braking. After braking 236 feet, the Amoco truck rammed Theresa Whittington's car at an approximate speed of 33 m.p.h.
Addison Lafiton did not present himself as a credible witness. He failed to disclose on his application for employment with Amoco that he had two prior moving violations, including a speeding violation. Nor did Addison Lafiton and Amoco appear to conduct themselves toward one another in a business like manner. Amoco failed to verify the representations made in Lafiton's employment application. Amoco violated a self-imposed standard by hiring Lafiton before acquiring a driver evaluation report. Lafiton failed to attend Amoco's monthly safety meetings for three consecutive months prior to the accident. No one from Amoco checked Lafiton's attendance. Lafiton allowed his driver's license to expire more than three months prior to the accident. Amoco failed to check whether Lafiton maintained his license in force and effect.
Addison Lafiton made a number of statements concerning the circumstances of the accident. Some of the statements contradict his prior statements. Other statements conflict with the evidence.
When deposed, Lafiton stated that he had last stopped before the collision at the intersecion of Chef Menteur Highway and Read Road. He recalled seeing from this location a red light for Chef Menteur at Crowder and the Whittington car stopped on Crowder at Chef Menteur despite having *184 the green light. At trial, Lafiton said that he had last stopped before the accident at the traffic light just before Crowder Road (which is Knight Drive) from where he first noticed the Whittington car. Shortly afterwards in his testimony, Lafiton contradicted himself by saying that he did not notice the Whittington car until after he had taken off from Knight Drive and had reached a position near Lancelot or Gawain.
Lafiton could not have seen the traffic signal on Chef Menteur at Crowder Boulevard and the Whittington car stopped on a green light at Crowder from the vantage point at Chef Menteur and Read; a bend in Chef Menteur between Read and Crowder blocks the line of sight.
Lafiton testified that after accelerating up to tenth gear from his last stop (Read in the deposition and Knight at the trial), he eased off the accelerator to let the truck roll until the traffic signal on Chef Menteur at Crowder turned green. He also stated that he touched his brakes a bit. However, the tachograph chart shows a rapid acceleration to 52-53 m.p.h. followed by a sharp deceleration to impact.
Lafiton also testified that as he approached Crowder he downshifted from tenth to ninth then from ninth to eighth. He claimed that the truck slowed down to approximately 35-40 m.p.h. by the time that he had passed Gawain Drive. He then stated that when he saw the light turn green for Chef Menteur at Crowder, he shifted up through ninth to tenth gear to an approximate speed of 45 m.p.h. Then, he claimed, he took his foot off the accelerator and let the truck roll. However, the tachograph chart shows a rapid acceleration from the last stop, with no downshifts followed by upshifts, then a sharp deceleration to impact.
The expert testimony agrees that the truck's speed was approximately 33 m.p.h. at the moment of collision. The expert testimony conflicts as to where Lafiton last stoppedRead or Knight. Some expert testimony tends to support Lafiton's allegation that he last stopped at Knight because the last stop at Read might not be supported by the factors of distance and speed relative to time. However, this opinion appears based upon the measure of time by the tachograph. An expert for the plaintiffs, Mr. Martineau, cast serious doubt on the accuracy of the measure of time by the tachograph, but not the other measures, because rapid deceleration would cause only the particular recording stylus for time to malfunction.
Some evidence introduced by the defense tends to but does not significantly discredit the measure of skid marks performed by the police. The measure of 236 feet of skid marks supports the theory that Lafiton may have initially used the hand brake to brake only the rear wheels. A tractor-trailer driver going at an excessive rate of speed on a wet road with mist still falling might brake in such a manner in order to avoid "jack-knifing" that could very well result from a lock-up of all wheels on all axles. The skid marks cast doubt upon Lafiton's testimony that the Whittington car began to go through the intersection when Lafiton was about 25 or 30 feet away and that he hit his brakes to avoid a collision. The police found that full brake application did not occur until impact.
The preponderance of the evidence indicates that the collision would not have occurred if Lafiton had not exceeded the speed limit and had applied all his brakes when the Whittington car entered the intersection.
Test reports of blood samples taken show that Theresa Whittington and Susan Roach respectively had blood alcohol content levels of 0.09 and 0.02. A level of 0.09 would result from consuming approximately two beers or two shots of alcohol within approximately an hour.
The jury found Addison Lafiton 100% negligent in causing the wrongful deaths of Theresa Whittington and Susan Roach for which Amoco, Lafiton's employer, is vicariously liable since the accident occurred while Lafiton was in the course and scope of his employment.
The jury awarded damages as follows:
(1) As to Mr. and Mrs. Roach

*185
(a) $ 5,000.00 - Conscious pain and suffering and
 pre-impact fear, fright and mental
 anquish experienced by Susan Roach
 before she died
(b) 16,367.20 - Medical expenses
(c) 5,760.81 - Funeral expenses
(d) 225,000.00 - Mr. Roach's mental anguish, grief,
 loss of love, affection and
 companionship
(e) 225,000.00 - Mrs. Roach's mental anguish, grief,
 loss of love, affection and
 companionship
 ___________
 $477,128.01 - Total
(2) As to Mr. and Mrs. Whittington
(a) $ 0.00 - Pre-impact fear and fright of Theresa
 Whittington
(b) 4,630.02 Funeral expenses
(c) 200,000.00 - Mr. Whittington's mental anguish,
 grief, loss of love, affection and
 companionship
(d) 200,000.00 - Mrs. Whittington's mental anguish,
 grief, loss of love, affection and
 companionship
 ___________
 $404,630.02 - Total

The appellants raise the following issues on appeal:
(1) Whether or not plaintiffs and State Farm maintained their burden of proof of proving their case by a preponderance of the evidence that the proximate cause or cause-in-fact of this accident was the negligence of Addison Lafiton when all of the testimony put forth by the plaintiffs and State Farm indicated there was no way of telling who had the red or green light.
(2) Whether or not it was an abuse of discretion and/or clearly wrong for the jury to find Addison Lafiton 100% negligent in causing this accident when there was no evidence that he ran a red light.
(3) Whether it was clearly wrong and an abuse of discretion for the jury to award the plaintiffs the sums awarded for the loss of a child.
(4) Whether the jury abused its discretion and was clearly wrong in finding Addison Lafiton 100% negligent with regard to the speed of his truck when the evidence from the plaintiffs and State Farm with regard to the color of the light was inconsequential and the evidence on speed was contradicted to have found Addison Lafiton 100% negligent based on the theory that his going over the speed limit at any time was proximately related to this accident.
(5) Whether the judge was clearly wrong in denying the jury charge suggested by Amoco and Lafiton with regard to alcohol consumption and using the charge that the trial court used.
(6) Whether or not the Court was clearly wrong in disallowing Amoco and Lafiton to impeach the credibility of the police officers based on lack of evidence to make an arrest.
(7) Whether the judge was clearly wrong in disallowing Joseph Andre to testify to his knowledge of a specific event where Officer McNab misjudged marks in the street.
(8) Whether it was clearly wrong for the Court not to give a charge on the "sudden emergency doctrine."
(9) Whether it was an abuse of discretion and clearly wrong for the jury to make an award of $5,000 to Mr. and Mrs. Roach for the pain and suffering of their daughter as a result of the injuries she sustained prior to her death when the only evidence was that she never regained consciousness.
(10) Whether it was abuse of discretion and clearly wrong for the trial court to allow Martineau to testify in rebuttal when his testimony was cumulative and showed the Court's preference for witnesses.
(11) Whether it was clearly wrong and prejudicial to instruct the jury on the defense of assumption of the risk and then exclude it from the jury interrogatories.
The appellate court should not disturb a finding of fact unless it is clearly wrong. The appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court. There must be a further determination that the record establishes that the finding is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La., 1978). Our review of the record leads us to conclude that the jury's findings are not clearly wrong.

ISSUE NUMBERS 1, 2, 4, and 5
The appellants' brief states that the plaintiffs could not prove that Addison Lafiton *186 had run through a red light. Lafiton testified that he had a green light, but Lafiton is not a credible witness. Lafiton failed to disclose on his application for employment with Amoco that he had moving violations on his record. His relation of where he last stopped before the accident is self-contradictory. His relation of accelerating and decelerating, applying his brakes lightly, downshifting and upshifting, and letting the truck roll between his last stop before the accident and impact has no basis in fact as reflected by the tachograph chart. We do not find clearly wrong the jury's refusal to believe Lafiton's representation that he went through the intersection of Chef Menteur and Crowder with a green light.
Lafiton and Amoco treated Lafiton's employment with indifference. Amoco failed to obtain an evaluation report of Lafiton before hiring him. Amoco failed to verify the representations made on Lafiton's employment application. Lafiton failed to attend Amoco's safety meetings. Amoco failed to check whether Lafiton attended the safety meetings. Lafiton failed to have his driver's license, his professional, occupational license, renewed. He drove with an expired license for the three month period preceding the accident. Amoco failed to check to make sure that Lafiton kept his license in force and effect.
These failures and omissions of Lafiton and Amoco set the stage for Lafiton's actions immediately preceding the accident. The tachograph chart shows that Lafiton habitually raced through the gears to get into tenth gear as quickly as possible. He did so from the last stop before the accident. He exceeded the speed limit for Chef Menteur under normal conditions (daylight, dry road) by approximately 12 to 13 m.p.h. when the actual conditions of darkness, nighttime, wet road, and misting were all but normal and required extra caution. La.R.S. 32:64. A prudent driver of a normal vehicle would drive in such conditions at least 5 to 10 m.p.h. below the speed limit. Lafiton, however, drove his large, heavy and dangerous truck, weighing 77,000 pounds and carrying 8,600 gallons of highly flammable gasoline, well over the speed limit in the dark night, on a wet road, while mist fell (which could continue to make the roadway slick and would impair vision through the windshield).
One version of Lafiton's story is that he saw the Whittington vehicle from Read (impossible) or from Knight (possible) and thought something unusual was happening because the Whittington vehicle did not advance with the green light. Nonetheless, despite being presented with an unusual situation, Lafiton did not proceed with caution; rather, he went full speed ahead.
In an attempt to avoid or to mitigate the liability of Lafiton and Amoco, appellants' counsel has seized upon a theory of the case that plaintiffs had the burden to establish that Lafiton ran a red light in order to prove his negligence. Appellants urge that Theresa Whittington ran a red light (an allegation made solely by Lafiton) because she was inebriated from having consumed approximately two drinks. Appellants have attempted to impute a presumption of negligent conduct to Theresa Whittington, arising from alleged but not proven inebriation, as the proximate cause of the accident.
There is no statutory presumption of intoxication in civil matters. LSA-R.S. 32:662; and Prestenbach v. Sentry Insurance Co., 340 So.2d 1331, 1334 (La., 1976). The finding of a specific blood alcohol content standing alone is not evidence that an individual is incapable of operating a motor vehicle and does not preclude recovery for damages caused by the negligent act of others. Wrights v. Aetna Insurance Company, 300 So.2d 201 (La.App. 3rd Cir., 1974); Bailes v. Southern Farm Bureau Casualty Insurance Company, 252 So.2d 123 (La.App. 3rd Cir., 1971), writ set aside and case dismissed on other grounds, 261 La. 106, 259 So.2d 29 (1972), cert. denied, 409 U.S. 872, 93 S.Ct. 202, 34 L.Ed.2d 123 (1972); and Sanders v. Eilers, 217 So.2d 205 (La.App. 1st Cir., 1968).
The mere showing that one has imbibed alcohol prior to involvement in an automobile accident does not per se establish *187 negligence contributing to the accident. Carter v. Alexis, 356 So.2d 445 (La.App. 1st Cir., 1977); Sedotal v. Gaspard, 207 So.2d 849 (La.App. 1st Cir., 1968); Bodan v. American Employers' Insurance Company, 160 So.2d 410 (La.App. 2nd Cir., 1964); see also Henry v. Belgard, 368 So.2d 472, 474 (La.App. 3rd Cir., 1979), writ denied, 371 So.2d 619 (La., 1979).
Defendants complain of the court's jury charge concerning alcohol consumption. However, the charge is correct: "Alcohol consumption, prior to an accident, must be shown to be a proximate cause of the accident to establish negligence on a driver." Defendants failed to do so.
Plaintiffs proved what they could. The evidence preponderates in favor of plaintiffs that Lafiton was negligent and that such negligence was the proximate cause of the accident. Lafiton had violated not only the speed limit but also the requirement that he travel under the speed limit due to the applicable conditions (La. R.S. 32:64). The defendants could defend only by proving fault by Theresa Whittington (or assumption of risk by the respective victims). Contributory negligence on part of the plaintiff is a defense to a tort suit which is for the defendant to prove. Smith v. Traveler's Insurance Company, 430 So.2d 55 (La., 1983). Defendants offered only a theory that Theresa Whittington became intoxicated from two drinks that caused her to run a red light and pull out in front of an oncoming eighteen wheeler loaded with gasoline. Defendants did not prove the effect alcohol had upon Theresa Whittington nor did they prove that Theresa Whittington ran a red light. Failing to prove the facts necessary to support contributory negligence, defendants have attempted to shift the burden of proof to the plaintiffs by urging that the plaintiffs failed to prove facts opposite of those that would support the defense of contributory negligence (and of assumption of risk). This argument lacks merit.
For the reasons given above, the decision by the trial court is not clearly wrong. We affirm the jury's finding that Addison Lafiton was 100% negligent and that such negligence was the proximate cause of the wrongful deaths of Theresa Whittington and Susan Roach. We also affirm the charge given to the jury concerning alcohol consumption.

ISSUE NO. 3
Under La.C.C. 1999, the jury has much discretion in awarding general damages. In Reck v. Stevens, 373 So.2d 498, 501, 14 A.L.R.4th 313 (La., 1979), the Louisiana Supreme Court set forth the principles for analyzing the jury's exercise of discretion. Before the court of appeal can disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after finding that the record supports an abuse of discretion by the lower court can the appellate court disturb the award, and then only to the extent of lowering it to the highest or raising it to the lowest award reasonably within the discretion allowed to the court. It is never appropriate for a court of appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.
We cannot find an abuse of the much discretion allowed the jury. The phrase "much discretion" suggests a very broad range for awards. The monetary award our society substitutes for a wrongfully taken life achieves merely a practical means to provide the survivors material comforts to lessen the devastation of their intangible loss. While some losses may be approximated by a computational method, such as lost earnings determined by actuarial means, the loss of love, affection and comfort cannot. The amounts of the general damages awarded in this case to parents who lost their beloved teenage daughters do not violate the standard of much discretion allowed a jury.

ISSUE NO. 6
The record reflects that all counsel stipulated that the circumstances of Addison Lafiton's arrest for running a red light would not be raised at trial. On cross *188 examination, counsel for the appellant questioned Sergeant Burkhardt concerning his opinion as to whether his observation of skid marks coincided with Addison Lafiton's representation concerning the events contributing to the accident. Sergeant Burkhardt responded that he did not believe Lafiton's representations, that he felt at the time that Lafiton had been grossly negligent and that he arrested Lafiton. Rather than objecting and asking to have the offending statements stricken as irrelevant and the jury instructed to disregard the statements, counsel attempted to gain a tactical advantage of impeaching Sergeant Burkhardt's investigation by showing that the charges against Lafiton did not result in prosecution. These circumstances are totally irrelevant to this civil case. The trial court promptly precluded further questioning concerning the matter and properly remedied the problem with the following jury instruction:
"Ladies and Gentlemen of the jury: You're instructed that any determination of negligence in this case is strictly within your province as jurors, and any statement by a witness concerning the fact that a party was negligent is to be disregarded by you. You make the determinations."
Counsel made a tactical decision to pursue questioning which he hoped would inure to the benefit of his clients. However, such line of questioning was properly excluded as irrelevant. The jury instruction properly redressed whatever harm that may have resulted from Sergeant Burkhardt's statements.

ISSUE NO. 7
Counsel for the appellants attempted to impeach the competency of Officer McNab through the direct testimony of Col. Andre, a witness for the defense. Counsel did not challenge Officer McNab's competency on cross-examination. McNab's alleged mistakes, which Andre supposedly observed at a totally unrelated investigation, had no predicate for examination. Counsel attempted an impermissible collateral attack upon Officer McNab's testimony which the trial court properly prevented.

ISSUE NO. 8
Defendants claim prejudicial error by the trial court's failure to give a jury charge on sudden emergency. "The sudden emergency doctrine is available only to a driver proceeding carefully and prudently who does not contribute to the creation of a sudden emergency. It is not available to a person who participates in creation of an emergency or who fails to properly act in order to avoid an emergency." Meshell v. Insurance Company of North America, 416 So.2d 1383, 1386 (La.App. 3rd Cir., 1983), citing Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133 (1965); Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir., 1980). Lafiton could not avail himself of this defense inasmuch as he admitted that he was speeding, in the night, in the darkness, on a wet road, while mist fell. These circumstances all indicate at the very least that Lafiton contributed to the sudden emergency. Moreover, Lafiton proceeded in this dangerous manner despite his representation that he had observed something unusual about the operation of the Whittington car which lay ahead. Lafiton cannot claim that he acted cautiously and prudently much less that he took appropriate measures to avoid the accident. The trial court acted correctly by not giving an instruction as to sudden emergency.

ISSUE NO. 9
Appellants contend that Susan Roach could not have experienced any conscious pain due to decortication. They cite Chausse v. Southland Corp., 400 So.2d 1199 (La.App. 1st Cir.1981), writ denied, 404 So.2d 497 (La., 1981), as having a similar fact situation and as support for reversing the award of $5,000 for Susan Roach's pre-impact fear, conscious pain and suffering. Counsel for Mr. and Mrs. Roach cite Marceleno v. State, Department of Highways, 367 So.2d 882 (La.App. 2nd Cir., 1979), rehearing denied en banc, writ refused, 369 So.2d 1364 (La., 1979), *189 where the Court affirmed recovery of $10,000 for the conscious pain and suffering of a victim who made gurgling sounds immediately following the accident and whose limbs twitched and eyes responded to light while observed in the hospital. The Court, citing Temple v. Liberty Mutual Insurance Co., 330 So.2d 891 (La., 1976), on remand, 336 So.2d 299 (La.App. 1st Cir., 1976), writ denied, 339 So.2d 23 (La., 1976), ruled as follows:
"Damages for a decedent's pain and suffering are not precluded when there is a `scintilla of evidence of any suffering or pain on the part of the deceased by his actions or otherwise during his unconscious hours from the time he was injured until his death' and when `there is evidence that the decedent made noises and movements indicating that he was sensitive to and aware of pain.'" Marceleno, supra, at 891.
Following remand from the Supreme Court, the appellate court in Temple, supra, awarded $10,000. The Court in Marceleno, supra, questioned the amount of the award of $10,000 in both Temple and Marceleno compared to the awards for pain experienced by conscious persons over an extended period of time, but found that the award in Marceleno appeared appropriate when the pain and suffering demonstrated in the cited cases appeared to be less than that shown in Marceleno. The record in this case reflects more than a scintilla of pain and suffering endured by Susan Roach. She made agonized sounds at the scene of the accident; in the hospital, she cried and squeezed her sister's hand in response to her sister's presence and reassuring remarks. The amount awarded does not manifest an abuse of the much discretion allowed a jury.

ISSUE NO. 10
Appellants object to the rebuttal testimony presented by recalling the plaintiffs' expert witness, Mr. Martineau. Plaintiffs in a civil action have the right to introduce rebuttal testimony. La.C.C.P. art. 1632. Counsel for plaintiffs originally examined Mr. Martineau concerning his reading and interpretation of the tachograph chart. Defendants cast doubt upon Mr. Martineau's methods and opinion through the testimony of their expert witness, Mr. Stephenson. On the whole, Mr. Martineau's rebuttal testimony redressed the criticisms of his methods and opinion by Mr. Stephenson by commenting upon the problems with the methods and opinion of Mr. Stephenson. Surrebutal by the defendant is not a matter of right, but may be allowed at the court's discretion. La.C. C.P. art. 1632; and Case v. Arrow Trucking Co., 372 So.2d 670, 680 (La.App. 1st Cir., 1979). The record does not suggest what surrebutal testimony could have been introduced, does not support the contention that the court's failure to allow surrebutal testimony constitutes an abuse of discretion, and fails to suggest how the surrebutal testimony could have altered the disposition of this case. The trial court properly exercised its discretion in declining to allow defendants to introduce surrebutal testimony.

ISSUE NO. 11
The appellants complain that the trial court committed prejudicial error by failing to submit a special interrogatory on assumption of risk to the jury despite having addressed the issue in the jury instructions. Counsel contends that the omission suggested to the jury that Theresa Whittington and Susan Roach neither assumed any risk nor committed any contributory negligence.
Counsel suggests that the address of the issue in a charge but the failure to include it in a special interrogatory is manifest error that requires reversal and cites Reed v. Gulf Insurance Co., 436 So.2d 580, 584 (La.App. 4th Cir., 1983), reversed on other grounds, 441 So.2d 752 (La., 1983), on remand, 447 So.2d 1102 (La.App. 4th Cir., 1984), writ granted, 456 So.2d 159 (La., 1984), affirmed, 468 So.2d 1159 (La., 1985). Generally speaking, the trial judge's discretion determines what special interrogatories shall be posed to the jury. La.C.C.P. arts. 1811 and 1812; Brown v. Lykes Bros. S.S. Co., 422 So.2d 213, 219 (La.App. 4th Cir., 1982). Reversal should result only *190 when the jury charges and interrogatories are confusing. Reed, supra. If such is the case, the appellate court has the obligation to apply the law to the facts shown on the record. La.1974 Const. Art. 5, § 10; La.C.C.P. art. 2164; and Gonzales v. The Xerox Corporation, 320 So.2d 163 (La., 1975), decided under 1921 Const. art. 7, § 29.
Counsel cites Forest v. State DOTD, 493 So.2d 563, 567-568 (La., 1986), as authority for maintaining distinctions between the affirmative defenses of contributory negligence and assumption of the risk. In reading the opinion, we see that the Louisiana Supreme Court recognized that the facts of the case effected a blurring of such distinctions. While counsel makes an interesting theoretical argument concerning the prejudice that could arise from giving a charge but failing to give a specific interrogatory, we find no such prejudice in this case. The trial judge addressed the issue of assumption of risk in his charge. Because of the facts of the case, all defenses were subsumed within the interrogatories concerning negligence by the respective victims. We find no abuse of the trial judge's discretion allowed under La.C.C.P. art. 1811 and 1812, nor do we find any confusion resulting from the charges on assumption of risk and the interrogatories posed. The jury found no negligence. The record supports the jury's findings. The record fails to support assumption of risk by either victim.
Appellants also wanted the trial judge to give a special charge and interrogatory to the effect that a person who consumes alcohol creates an inherently dangerous situation and assumes the risk of whatever happens to him. The trial judge gave the proper charge pertaining to alcohol consumption. No presumption in a civil case exists as to intoxication or fault resulting from the consumption of alcohol. Defendants failed to prove the effects of alcohol consumption. Appellants have no right to the charge and interrogatory requested.
In order to assume a risk, one must knowingly and voluntarily encounter the risk and understand the nature and the extent of the risk involved and then voluntarily expose oneself to it. Beck v. Boh Bros. Const. Co., 467 So.2d 1318 (La.App. 5th Cir., 1985); and Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La., 1976). The record contains no facts that would support a jury interrogatory on assumption of risk. What risk did Susan Roach assume? She did not have a driver's license and she could not drive. The facts presented do not support the contention that she assumed the risk of someone running a red light. No evidence exists as to the effects, if any, consumption of alcohol had upon Theresa Whittington. The appellants' expert witness, Dr. Samuels, testified that a naive and inexperienced drinker such as Susan would not necessarily be able to appreciate the effect of alcohol upon another person. Susan Roach could not have assumed the risk in connection with alcohol consumption by Theresa Whittington. The jury finding of no fault by Theresa Whittington renders moot whether Susan Roach assumed any risk.
What risk did Theresa Whittington assume? No evidence exists to support the contention that the alcohol she consumed caused her either to run recklessly through a red light or pull out in front of an oncoming, speeding gasoline tanker truck. The defendants have no right to such a presumption under law.
The trial judge's charges and interrogatories were proper. The record establishes that the facts which would support the defense of contributory negligence are identical to those which would support assumption of risk. Because the findings of the jury do not support contributory negligence, they cannot support assumption of the risk. Prejudice did not cause such findings.
Accordingly, for the reasons expressed above, the trial court's judgment and awards of damages are affirmed.
Costs to appellants.
Affirmed.